CITY OF MADISON, Plaintiff-Appellant-Petitioner,

v.

Richard E. BAUMANN, Defendant-Respondent. [Case No. 89–0452.]

CITY OF MADISON, Plaintiff-Appellant-Petitioner,

v.

David MATTHEWS, Defendant-Respondent. [Case No. 89–0453.]

Supreme Court

*Nos. 89–0452, 89–0453. Argued March 26, 1991.—Decided June 12, 1991.*

(Also reported in 470 N.W.2d 296.)

For the plaintiff-appellant-petitioner there were briefs by *Marinus J. W. Petri*, assistant city attorney, with whom on the briefs was *Henry A. Gempeler*, city attorney and oral argument by *Mary E. Kramer*, assistant city attorney.

For the defendants-respondents, there was a brief and oral argument by *Michael J. Briggs*, Madison.

Amicus curiae brief was filed by *James H. Schneider* for the league of Wisconsin Municipalities.

HEFFERNAN, CHIEF JUSTICE. This is a review of a decision of the court of appeals that affirmed the judgment of the circuit court for Dane county, James C. Boll, Judge, that City of Madison's general ordinance 24.04(1) was unconstitutional.[1] We reverse and remand.

---

[1] *City of Madison v. Baumann; City of Madison v. Matthews,* 155 Wis. 2d 388, 455 N.W.2d 647 (1990). The decision concluded, contrary to the holding of the circuit court, that the ordinance was not overbroad, but agreed with the circuit court that the ordinance was void for vagueness and, hence, unconstitutional.

This litigation was initiated by issuing of citations to Baumann and Matthews for violating the City of Madison's anti-noise ordinance 24.04(1) for playing musical instruments and singing at Peace Park on the State Street Mall at 11:22 p.m. on the evening of June 12, 1986. The City of Madison ordinance provides:

> No person shall make or assist in making any noise tending to unreasonably disturb the peace and quiet of persons in the vicinity thereof unless the making and continuing of the same cannot be prevented and is necessary for the protection or preservation of property or of the health, safety, life or limb of some person.

The facts underlying the complaint against Baumann and Matthews are agreed upon by stipulation of the parties, and incorporated into that stipulation is the narrative report of Officer Brett Wisnauski, who issued the citations to the musicians.

The stipulation recites that, at the time and place in question, June 12, 1986, Baumann and Matthews were playing a violin and a guitar and singing in the 400 block of the State Street Mall at an area designated as Peace Park.[2] Although neither of the musicians was using amplification devices, the sound of the music was such that Peter O. Bockhorst, a resident of an apartment 66 feet across the street, stated that he was unable to sleep. It was a mild spring night that resulted in open bedroom windows. Bockhorst said he was attempting to sleep

---

[2] *Random House Dictionary of the English Language* (2d ed.), p. 1425, gives, among other definitions, the definition of peace: "A state of mutual harmony between people or groups, esp. in personal relations: *Try to live in peace with your neighbors.*" Other meanings: "Tranquility, serenity . . . silence, stillness; *The cawing of a crow broke the afternoon's peace.*" These definitions raise the question: Whose peace is it anyway?

when the musicians commenced playing and did not stop and that the constant playing and singing was an obstacle to sleep. He accordingly called the police, who found Bockhorst to be "quite disturbed" about the noise. Bockhorst stated that previous complaints had resulted in warnings to "the minstrels," but nevertheless the minstrels returned to the same spot night after night.[3]

We refer to this portion of the stipulated facts only to show that there was evidence acknowledged in the stipulation that noise of the type for which the citations were issued was a continuing problem. Officer Wisnauski stated that it was not uncommon to respond to as many as 15 to 30 calls per month complaining about minstrel noise on the mall. Officer Wisnauski stated that he stood across the street with the complaining citizen. He wrote in his report:

> Since I could hear the music from across the street, the hour was increasingly late, and the evening was warm, having residents' windows open, and because I feel the violators should have been aware of the problems they cause in the 400 block of State St, I issued the citations.

He stated that he issued each citation on the charge of "Making Unreasonable Noise."

It is stipulated that nine years ago, State street was converted to use as a pedestrian mall. The use of the mall by motor vehicles is limited to buses, taxis, service deliveries, and emergency vehicles.

The sidewalks are broad, and the declared municipal purpose is to create a business and shopping area and, in

---

[3]It is unclear from the stipulation whether Baumann and Matthews were previously warned about their noise-making. The City asserts that they had been warned before. Their counsel denies any previous warning.

addition, to dedicate an area for all persons to use for recreation and entertainment. The vending of food and crafts on the mall is encouraged. The city, in some cases, subsidizes artistic performances. It decorates the area with banners and lights in a manner consistent with the seasons. There is nothing which prohibits street musicians from placing a hat or some other container near them, so members of the public may deposit money in appreciation of the performance.[4]

The defendants were professional musicians of some prominence. Both of them had their performances recorded for public sale. Neither of them ever had been "cited" for a violation of the noise ordinance. Although they had performed on the mall at various seasons of the year, they did so especially in the summer months. It was stipulated that no decibel meter or other sound-measuring device was used by the police officer. The citations were issued for "making unreasonable noise."

On this state of facts and on the motion of the defendants to dismiss the complaints because the ordinance on its face was unconstitutional, the circuit judge

---

[4]The Court of Appeals for the Seventh Circuit, in the course of upholding a different anti-noise ordinance appearing in the same section of the Madison City Code as the one under discussion here, described the State Street Mall:

> The Mall is a unique public forum. A speaker's platform, an area for crowds to gather and a central location in Madison make it ideal for gatherings, political or otherwise. The Mall is, however, surrounded by buildings, including Memorial Library, and the city clearly has a legitimate interest in regulating the Mall in light of these competing demands. Moreover, the government's interest in maintaining limits on the sound level in Madison generally is also a permissible interest.

*Stokes and Goldstein v. City of Madison*, 930 F.2d 1163 (7th Cir., 1991).

ordered dismissal after concluding that the ordinance was overbroad and void for vagueness.

The city appealed. On the appeal, the court of appeals disagreed in part with the circuit judge in that it found the ordinance not to be overbroad, but affirmed the judgment of the trial court because the ordinance was impermissibly vague.

We have accepted the case on the petition for review of the City of Madison. We reverse, holding that the ordinance is not impermissibly vague and is therefore constitutional.

The court of appeals found that the defendants were in the course of a musical presentation and therefore were indulging in expressive conduct that warrants the protection of the First Amendment. Accordingly, a major premise of the majority opinion is contained in the quotation in footnote 3:

> "When a statute infringes on the exercise of First Amendment rights, the burden of establishing its constitutionality is on its proponent." *Wisconsin Action Coalition v. City of Kenosha*, 767 F.2d 1248, 1252 (7th Cir. 1985).[5]

Although the city argues that Chief Judge Eich, the sole dissenter to the court of appeals majority, disagreed with that premise and would have given the ordinance the same presumption of constitutionality that is afforded in non-First Amendment cases, we do not find that analysis of his dissenting opinion to be correct.

---

[5]The correctness of this statement can hardly be doubted. It has been stated in various ways. *See Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984); *Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 658 (1981).

Chief Judge Eich, in restating his position, indeed recognized the majority's position, *i.e.*, that the usual presumption of constitutionality of a legislative act was not applicable. He did not, however, dispute that premise. Rather, the reason that he gave that the ordinance was constitutional was "because the City of Madison has satisfied me that the ordinance is not so vague that one can only guess at its meaning." 155 Wis. 2d at 407. In short, Chief Judge Eich concluded that the City had assumed the burden of establishing its constitutionality.

We agree with Baumann and Matthews' statement that the burden of establishing the constitutionality of an ordinance which impinges on First Amendment rights is upon its proponent; but we conclude, agreeing with the dissent, that the city has satisfied that burden, and any cloud of unconstitutionality has been dissipated.

It is, nevertheless, the initial duty of the person who claims the protection of the First Amendment to demonstrate that the conduct is speech or its equivalent, to which First Amendment protections apply.

The city argues that the ordinance is not aimed at the expressive or free-speech aspects that music may sometimes have—that this is an anti-noise ordinance and nothing more. It, however, implicitly recognized the correctness of the premise of the court of appeals majority that the burden, where speech is impinged upon, is upon the proponent, when it stated:

> The ordinance in the instant case is so far from the core of the First Amendment, that the presumption of constitutionality cannot easily be set aside. This is so because the core conduct . . . is noise; not music . . ..

669

This assertion ignores the stipulated facts. The report of Officer Brett Wisnauski refers to hearing the "music" from his listening post on the other side of State street. An initial question, then, is to what degree is "music" to be accorded the status of speech protected by the First Amendment? "Music" by definition is to be accorded the presumption of the freedom of speech given by the First Amendment. "Music" is defined by the *Random House Dictionary of the English Language,* at 1268:

> 1. an art of sound in time that expresses ideas and emotions in significant forms through the elements of rhythm, melody, harmony, and color.

Funk & Wagnalls, *New Standard Dictionary of the English Language,* p. 1635, defines "Music" as:

> The science and art of rhythmic combinations of tones, vocal or instrumental, embracing melody and harmony, for the expression of anything possible by this means but chiefly anything emotional . . ..

Certainly, our history demonstrates the expressive and persuasive power of music. We need only to call to mind such songs as "Yankee Doodle," "The Star Spangled Banner," "The Bonnie Blue Flag," "Dixie," "The Battle Hymn of the Republic," "Marching Through Georgia," and "Over There." Among other inspirational hortatory songs are "The Marseillaise," "Solidarity Forever," "Rule Britannia," and the contemporaneous "freedom" and "protest" songs. Music without words may equally, perhaps more powerfully, carry a message, *e.g.,* "Finlandia." As one poet truly said:

> We are the music-makers,
> And we are the dreamers of dreams,
> Wandering by lone sea breakers,

670

And sitting by desolate streams;
World-losers and world-forsakers,
 On whom the pale moon gleams,
Yet we are the movers and shakers
 Of the world forever, it seems.

One man with a dream, at pleasure,
 Shall go forth and conquer a crown;
And three with a new song's measure
 Can trample an empire down.

Bartlett, *Familiar Quotations,* 14th ed. 1968, *Ode* by Arthur William Edgar O'Shaughnessy.

The city argues, however, that whatever characterization is given to the sound produced by the minstrels, there was no specific message that the defendants sought to communicate. The city states, "The only apparent audience consisted of one disturbed sleeper and two neutral police officers." Surely, freedom of speech or the right thereto is not to be evaluated by the number of listeners or on their receptivity to the message. Senator William Proxmire spoke daily for years—usually to an empty Senate chamber—urging the ratification of the Genocide Treaty. Eventually, someone listened.

The courts of this country uniformly recognize the protected First Amendment aspects of music—all music.

The United States Supreme Court in *Ward v. Rock Against Racism,* 491 U.S. 781, 790 (1989), stated unequivocally that, "Music, as a form of expression and communication, is protected under the First Amendment." Thus, it appears to us that merely the unchallenged assertion that the conduct is the making of music places the activity under the protecting arms of the First Amendment. It needs no more than awareness of the

671

dictionary definition of music to reach that irrefutable conclusion. Hence, the defendants have shown that we are dealing with a constitutionally protected right.[6] This places the burden on the proponent of the ordinance, the city, to justify whatever restrictions are imposed. Both the majority and the dissent in the court of appeals correctly so concluded.

The plaintiff city and the dissenting opinion of Chief Judge Eich stoutly maintain that, whether or not the sounds made by the defendants were music, at the time of the issuing of citations, they were in violation of a constitutional city ordinance, because the music was "noise" that tended to unreasonably disturb the peace and quiet of persons in the vicinity.

The essential feature of the city's argument in its justification of the ordinance that in fact impinges upon First Amendment rights is the legitimate governmental interest in preserving the peace and quiet and that the ordinance serves that purpose. *Stokes and Goldstein v. City of Madison,* cited *supra* n.4.

The city asserts that the ordinance is not constitutionally vague. A vague statute or ordinance is infirm because it does not give notice of what is prohibited by the legislation. Where the concern is freedom of speech, we look to the face of the ordinance to guard against the possibility that a vague prohibition may deter or give pause to socially desirable conduct or expression. Because the trial court granted defendants' motion to dismiss and decided only the facial validity of the ordi-

---

[6]It should be noted that the spirited dissent of Justice Marshall in *Ward, supra* at 803, does not reflect any dispute on the court in respect to the protected nature of music (Rock, as well as Bach), but only a dispute as to the standard to be used to justify government's impingement on First Amendment rights.

nance, we look only to the words of the ordinance. If we hold the ordinance to be constitutional, as we do, the cause appropriately is to be remanded for further proceedings and disposition.

The facts, the ordinance itself, and the parties' agreement lead to the conclusion that the ordinance is content neutral. There is no intimation that the purpose of the ordinance was to prefer one form of speech or one viewpoint over another. Also, as the stipulation of facts reveals, this episode took place at a small park that is a part of a pedestrian mall. If ever there were a situs that clearly could be denominated as a public forum, this is it. Also, to the extent that it is contended that the ordinance stifles or thwarts freedom of expression or the communication of a particularized message, it is not disputed that alternate methods are available at times and places and by other means on the mall itself. What is at issue here is an ordinance which was used in this case to impinge upon freedom of expression late at night when the expression took the form of music that aroused the ire of at least one citizen.[7]

The challenge is vagueness. A vague statute, when it impinges upon fundamental First Amendment rights, is not enforceable for, by definition, a vague statute is of such a nature that persons cannot know their rights and responsibilities. The void for vagueness doctrine was well set forth in *State v. Princess Cinema of Milwaukee,* 96 Wis. 2d 646, 292 N.W.2d 807 (1980). This court said:

---

[7]It should be remembered that 24.04(1) is a general ordinance that has applicability throughout the city limits. It was not enacted for the particular purpose of controlling activities on the State Street Mall.

> A vague statute [is one that] through the use of language . . . is so vague as to allow the inclusion of protected speech in the prohibition or to leave the individual with no clear guidance as to the nature of the acts which are subject to punishment.

*Id.* at 656.

> The void for vagueness doctrine ". . . incorporates the notions of fair notice or warning . . . .. [i]t requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement.' "

*Princess Cinema* at 657.[8]

There is no contention, nor can there be, that there does not exist a governmental interest that in some cases can justify some impingement upon freedom of expression. Implicit in this rarely justifiable encroachment on freedom of speech is the principle that the encroachment be clearly defined, that persons who seek to exercise free speech and officers who attempt to enforce restrictions will not have to resort to nebulous provisions that give no guidance either to possible violators or to enforcers. But it is fundamental, as the United States Supreme

---

[8]This latter statement in *Princess Cinema* adumbrates a more specific statement to the same effect that appeared recently in *Kucharek v. Hanaway,* 902 F.2d 513 (7th Cir. 1990). Judge Posner wrote:

> The primary purpose of this doctrine [to give fair notice to persons] as articulated in the modern cases is the realistic one of limiting prosecutorial discretion rather than the unrealistic one of protecting the reliance of people—for there are precious few—who actually read statutes, criminal or otherwise . . . ..

*Id.* at 518.

Court recognized in *Cameron v. Johnson,* 390 U.S. 611, 616 (1968), that government regulation of conduct that intermingles with freedom of speech is not *per se* unconstitutional. Referring to a limitation on picketing rights, the *Cameron* court said that the regulation was " 'a valid law dealing with conduct subject to regulation so as to vindicate important interests of society [ingress and egress to buildings] and . . . the fact that free speech is intermingled with such conduct does not bring with it constitutional protection.' " *Id.* at 617.

Defendant specifically recognizes that the city may regulate free speech, including music, but can only do so for the purpose of implementing a significant governmental purpose, and it can do so only when it leaves open other opportunity for freedom of speech and then only by regulations that are not vague.

Defendants concede that the ordinance has a legitimate public purpose, the control of noise to preserve the peace and quiet of the city, but the ordinance may not constitutionally accord to policemen or other public officials limitless discretion in deciding whom to prosecute; nor, defendants contend, can the ordinance so lack specificity that it gave no notice to the defendants that their performance on the evening of June 12, 1986, was prohibited by the ordinance.

Fundamentally, the position of the defendants and of the court of appeals is simply: How were the defendants to know that playing music as they did, with the amplitude at which they played, where and when they played, would subject them to legal sanctions? And they could only know, defendants contend, *i.e.,* have proper notice by the ordinance, if the ordinance were written in respect to a particular context as in *Grayned v. City of Rockford,* 408 U.S. 104 (1972), where the prohibition on

675

noise was applicable only when made within 150 feet of a school.

Alternatively, the defendants suggest that to protect the legitimate governmental interest the city set specific times and places at which music can be played, and that some appropriate decibel level be mandated, so it can be known with absolute certainty by all concerned what conduct is prohibited. There is no doubt that such ordinance would be constitutional, at least in the face of a "void for vagueness" challenge. Whether it would state good public policy is not for this court to decide.[9]

Public policy in the instant case has been formulated by the common council of the City of Madison. Our task is not to formulate an ordinance that would withstand all constitutional challenge. Rather, ours is to determine whether this ordinance, recognizing as we do that it impinges on free speech, can, on its face, be found to be constitutional.

We have established that some such encroachment is permissible in the face of a substantial governmental interest. Thus, the question is whether the ordinance is "narrowly tailored" to further the appropriate governmental interest of assuring peace and quiet while yet giving warning and notice of the regulation in order to avoid inappropriately curtailing speech because the prohibition is vague.

The ordinance is not so vague that one can but guess at its meaning. We said in *State v. Zwicker*, 41 Wis. 2d 497, 507, 164 N.W.2d 512 (1969), citing *Landry*

---

[9]The city asserts that such draconian strictures would leave no flexibility and would tend to curtail, rather than to expand, the opportunities for freedom of expression and would require a code of Byzantine complexity to cover with particularity all possible situations in the entire City of Madison.

676

*v. Daley* (D.C. Ill. 1968), 280 F. Supp. 938, that, in examining a legislative act for vagueness:

> The primary issues are whether the provisions . . . are sufficiently definite to give *reasonable* notice of the prohibited conduct to those who wish to avoid its penalties and to apprise judge and jury of standards for the determination of guilt. [Emphasis supplied.]

In *State v. Givens,* 28 Wis. 2d 109, 117, 135 N.W.2d 780 (1965), we relied upon *Jordan v. DeGeorge,* 341 U.S. 223 (1951), for the proposition that "[t]he fact that a statute fails to itemize with particularity every possible kind of conduct which would violate such statute does not make it unconstitutionally vague."[10]

The city argues that the provision of the ordinance "tending to unreasonably disturb the peace and quiet of persons in the vicinity," correctly read and interpreted, gives the ordinance the necessary freedom from vagueness. The defendants argue that it is this very provision that creates vagueness. Defendants ask: How is *unreasonably* to be interpreted—particularly when whether the conduct is reasonable depends upon the subjective reaction of one in the vicinity, one who may be hypersensitive or perhaps subjectively unreasonable?

We conclude that the word, "reasonably," saves the ordinance from the infirmity of vagueness. The reasonable-person standard is one that has been relied upon in all branches of the law for generations. It permeates our negligence law. In the opinion cited above, *Landry v.*

---

[10]The scrivener of this opinion dissented in both *Givens* and *Zwicker,* but only in respect to the application of the facts—not to the fundamental legal principles stated by the majority in each case and which are relied upon herein.

*Daley,* the reference to the provisions that save the ordinance are those that give "reasonable" notice of what is prohibited conduct. While it is argued that the terms, "reasonable" or "unreasonable," only have meaning in context, *i.e.,* egress or ingress to a place which is being protected or in propinquity to a school, "reasonable" is always conceptual. The reasonable person is a reasonable person in the circumstances. It is what is "[f]it and appropriate to the end in view." *Black's Law Dictionary* (rev. 4th ed.), p. 1431. In the instant case, the circumstances are adequately spelled out. They are simply what a reasonable person would conclude would disturb the peace and quiet of the vicinity. The test for a possible violator is simply the time honored and time validated reasonable person test, *i.e.,* what effect will my conduct—singing or playing—have upon persons in the vicinity[11] under the circumstances.

While the consideration of reasonable or unreasonable person, reasonable or unreasonable noise, reasonable or unreasonable disturbance can verge on the metaphysical (counsel for defendants at oral argument apparently saw little difference in the concepts), we are not required to write upon a clean slate. The issue has been decided by this court.

The criminal statute at issue in *State v. Zwicker,* 41 Wis. 2d 497, 502, 164 N.W.2d 512 (1969), provided:

> Sec. 947.01 Disorderly conduct. Whoever does any of the following may be fined not more than $100 or imprisoned not more than 30 days.
>
> (1) In a public or private place, engages in violent, abusive, indecent, profane, boisterous, *unreasonably* loud, or otherwise disorderly conduct under

---

[11]*See Cameron v. Johnson,* 390 U.S. at 616, which upheld the use of the word, "unreasonable," in the face of the argument that the word in itself was necessarily vague.

circumstances in which such conduct tends to cause or provoke a disturbance. [Emphasis supplied.]

The critical words of the *Zwicker* statute in relation to the present case are "unreasonably loud . . . conduct under circumstances in which such conduct tends to cause or provoke a disturbance." That statute was upheld as against a challenge for vagueness that specifically focused on the function of the word, "unreasonably." The court in *Givens,* discussing the same statute, referred to the legislative committee's report which commented upon the statute when it was first proposed. That committee discussed the use of the word, "unreasonably," as it appeared in the disorderly conduct statute. The word was referred to in the legislative committee's report at least three times to demonstrate that its purpose was to permit flexibility in assuring law and order, but that it also was definite enough to prevent abuses in administration.

> Only such conduct as unreasonably offends the sense of decency or propriety of the community is included. This is implicit in the phrase, "tends to disturb or annoy others." The question is not whether a particular person was disturbed or annoyed but whether the conduct was of a kind which tends to disturb or annoy others. This section does not protect the hypersensitive from conduct which generally is tolerated by the community at large.

*Givens,* 28 Wis. 2d at 116–17.

The Madison ordinance, like the criminal statute in *Zwicker* and *Givens,* is concerned with curbing disorderly conduct, but 24.04(1) is focused on noise alone.[12]

---

[12]Greater latitude is allowed in "vagueness" analysis of ordinances than in respect to criminal statutes. Madison General Ordinance 24.04(1) provides for only civil penalties. While we

The state criminal statute encompasses noise and other prohibited activities.

These legislative acts, however, are substantially analogous. As the legislative committee's comment makes clear, the word, "unreasonably," is the linchpin that prevents excessive discretion in the police and which gives guide to persons in respect to their conduct. In each case the concept of reasonableness is what prevents the actor from being at the mercy of the hypercritical. It is what will disturb a reasonable person that is actionable. What a reasonable person would avoid doing at the time and place in the sense of making noise—whether that noise is music or not—is all that is asked by the Madison ordinance for musicians to avoid a citation.

We look to the facts of this case to determine how this ordinance has been interpreted. We conclude it was interpreted appropriately and constitutionally. The report of Officer Brett Wisnauski states:

> Since I could hear the music from across the street, the hour was increasingly late and the evening was warm, having residents' windows open, and because I feel the violators should have been aware of the problems they cause in the 400 Block of State St, I issued the citations [for making unreasonable noise].

Officer Wisnauski expressly made his decision to issue the citations on the basis of what was reasonable under the circumstances. In our view, and in the view of

would conclude that this ordinance would pass muster even in a criminal penalty context, in view of the correct approval of the statute in *Zwicker* and *Givens,* the argument that this civil ordinance is void for vagueness is without substantial merit.

the officer as manifested by his actions, the ordinance met the Posner test stated in *Kucharek v. Hanaway,* 902 F.2d 513 at 518, of telling the officer when he should act, and it also met the test for vagueness that requires an appreciation of what a reasonable person ought to be doing in the circumstances to avoid running afoul of the anti-noise ordinance. The officer, relying on the statute, concluded, in light of the hour, the place, the temperature, etc., that the music being made by Baumann and Matthews was noise that tended to unreasonably disturb the peace and quiet of others in the vicinity.

To the extent that the ordinance needs any judicial gloss to assure that it is constitutional, we need only state that the proper standard clearly apparent to the police officer from the face of the ordinance and equally apparent to the musicians was to act reasonably in the circumstances. We conclude that such action, as in *Zwicker,* saves the ordinance from any facial defect. The conduct of the police officer in the instant case is mandated by the requirement of reasonableness in the ordinance itself. We therefore hold that the ordinance on its face passes constitutional muster. It is not void for vagueness.

There remains a substantial question to be resolved—a question that arises by reason of the language used by the majority in the opinion of the court of appeals.

That court states, at 395, that, where there is an impingement upon the free exercise of speech, even in circumstances justified by protection of governmental interests, the test of whether the impingement is permitted is whether it passes the test of "heightened scrutiny." We do not understand that to be the test or that

681

the regulation must be so stated as to accomplish the governmental purpose by least intrusive encroachment on speech. The recent case of *Ward v. Rock Against Racism,* 491 U.S. 781, although not a vagueness case, explicitly points out that, where the conduct of the government furthers a legitimate interest (in this case, peace and quiet of a neighborhood), it must be "narrowly tailored," but it need not be the least intrusive way of accomplishing the governmental purpose. The United States Supreme Court specifically disavowed the "heightened scrutiny" test. *Ward v. Rock Against Racism,* 491 U.S. at 797. The court went on to state, at 798–99:

> Lest any confusion on the point remain, we reaffirm today that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini, supra,* at 689; see also *Community for Creative Non-Violence, supra,* at 297. To be sure, this standard does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests. Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals. [Footnotes omitted.]

It should be pointed out that the minority justices in *Ward* differed from the majority in respect to the definition of "narrowly tailored." Nonetheless, it appears

682

that this is the standard that has been adopted by the United States Supreme Court. Our reference to a different test used by the majority of the court of appeals does not indicate our approval or disapproval of the definition of "narrowly tailored" found in *Ward*. We need not make this decision to decide the vagueness question. We rely upon *Zwicker,* a case well ensconced in the jurisprudence of Wisconsin. As so construed, and as construed by the officer in this case, we see no constitutional infirmity in respect to vagueness. We stress that enforcers of this law should use the reasonableness standard, which is an objective, not a subjective, standard. We would not uphold as violative of this ordinance a prosecutorial decision based upon the hypersensibilities of either the complainant or the investigating officer. The question is reasonableness. As so interpreted, the ordinance surmounts the onslaught of vagueness.

Because the case arose on a motion to dismiss, the city's prosecution is not at an end. Accordingly, we reverse the decision of the court of appeals and declare that the ordinance is not vague and remand to the circuit court for further proceedings.

*By the Court.*—Decision reversed and remanded.