County of Jefferson, Plaintiff-Respondent,†

v.

Christopher D. Renz, Defendant-Appellant.

Court of Appeals

*No. 97–3512. Submitted on briefs July 27, 1998.—Decided October 15, 1998.*

(Also reported in 588 N.W.2d 267.)

†Petition to review granted.

425

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Stephen E. Mays* of *Kalal & Associates*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Tris Baker*, assistant district attorney.

Before Vergeront, Roggensack and Deininger, JJ.

VERGERONT, J.   On this appeal from a judgment of conviction for driving while under the influence of an intoxicant (OWI) and with a prohibited alcohol concentration (PAC), Christopher Renz raises these issues: (1) Does the statute regulating mufflers, § 347.39, STATS., violate the due process clause due to vagueness? (2) Does § 343.303, STATS., require probable

cause to arrest before an officer may request a breath sample for a preliminary breath test (PBT)? (3) If probable cause to arrest is required before the administration of a PBT, was that standard met in this case? We conclude the muffler statute is not unconstitutionally vague and therefore the officer's detention of Renz for a violation of that statute was proper. We also conclude § 343.303 does require probable cause to arrest before administration of the PBT, and the officer here did not have probable cause to arrest before asking Renz to provide a breath sample. We therefore reverse the trial court's order denying Renz's suppression motion and the judgment of conviction.[1]

## BACKGROUND

Renz was arrested for OWI in violation of § 346.63(1)(a), STATS., after Deputy Sheriff David Drayna stopped him because of the loud sound of exhaust emitting from Renz's vehicle. Based on a subsequent blood test, Renz was also charged with driving with a PAC in violation of § 346.63(1)(b). Renz moved to suppress evidence on the ground that the stop was unlawful because the officer did not have a reasonable suspicion to believe that Renz's vehicle failed to comply with § 347.39, STATS. He also moved to suppress on the ground that the officer did not have probable cause to arrest at the time he requested Renz submit to a PBT, and the PBT result could therefore not be considered in assessing the existence of probable cause.

At the hearing on the motions, Officer Drayna presented the only testimony. He had been a deputy

---

[1] Renz was convicted of OWI and driving with a PAC under ordinances adopting § 346.63(1)(a) and (b), STATS. However, pursuant to § 346.63(1)(c), Renz was sentenced on only one offense, the violation of § 346.63(1)(a).

sheriff for six years and had made over 200 arrests for OWI. He was on duty in the early morning of February 12, 1996, traveling on Highway 106 in Jefferson County. Although the windows of his car were closed and his radio was on, he could hear exhaust emitting from a vehicle passing his car. Based on his Wisconsin State Patrol Academy course on equipment of motor vehicles, he concluded that the muffler on the vehicle violated § 347.39(1), STATS., which requires motor vehicles to be "equipped with an adequate muffler in constant operation and properly maintained to prevent any excessive or unusual noise. . . ." He had learned as a basic rule of thumb that if a vehicle made after 1979 was louder than a car with a muffler that had just "come from the factory," there was a violation of the statute. The vehicle was a 1991 Chevy Camaro. Drayna testified that he knew the muffler was defective and had leaks, otherwise it would not be as loud as it was. In his opinion, it was "excessively loud."

Officer Drayna pulled the vehicle over, using his emergency lights, and spoke to the driver, who identified himself as Renz. Renz stayed in his car and rolled down the window to speak to Officer Drayna. The officer detected a strong odor of intoxicants coming from the vehicle. He explained to Renz that he stopped him because of a defective exhaust, and Renz acknowledged that he knew it "had leaks and was loud." Officer Drayna returned to his car to run a routine license check, and when he went back to speak to Renz, he again noticed a strong odor of intoxicants. Officer Drayna asked Renz to step out of his car and asked him if he had been drinking that evening. Renz replied that he was a bartender at a tavern and had consumed three beers earlier in the evening. The officer did not observe Renz's speech to be slurred.

At the officer's request, Renz agreed to submit to field sobriety tests. Officer Drayna was trained to administer these tests by the National Highway Traffic Safety Administration. The first test was the alphabet test, and Renz recited the alphabet correctly. For the one-legged stand test, Renz was instructed to stand on one leg to the count of thirty, but he lost his balance at the count of eighteen and put his foot down. He started the test again, beginning with the number ten and continuing the count to thirty. He performed all other aspects of the test correctly, including beginning with his feet together, keeping his arms down, and putting his foot of choice directly in front of him. Renz exhibited one out of four "clues" of intoxication on this test, according to the manual Officer Drayna used.

The heel-to-toe test involved walking heel to toe on an imaginary line nine steps in one direction, turning, and walking nine steps back. Renz left a gap of about one-half inch to an inch between steps. He lost his balance on the return set of nine steps, meaning that he stepped off the imaginary line on step seven, then restarted and finished the test. Renz appeared to the officer to be unsteady while performing this test, meaning that he swayed from left to right. Renz did take the correct number of steps; make a proper turn; did not lose his balance during the instructions; did not start walking too soon; did not stop while walking; and did not raise his arms from his sides while walking. According to Drayna, out of eight potential "clues" on this test for intoxication, Renz exhibited two.

The finger-to-nose test requires the taker to close his eyes, tip his head back, and first place the right index finger on the tip of the nose, then the left index finger. Renz did touch the tip of his nose with his right index finger but with his left index finger he touched

the upper bridge of his nose. He did not sway and had good balance while performing this test.

Officer Drayna testified that he administered a fifth test, the horizontal gaze nystagmus (HGN), which tests for jerkiness of the eyes. However, the trial court sustained Renz's objection to Officer Drayna's testimony on the administration and results of this test. The court ruled that expert testimony was needed to establish that the HGN was a test that a lay person could administer and interpret and to establish that the test was a valid indicator of intoxication.[2]

---

[2] The County includes in its statement of facts and argument all of Officer Drayna's testimony on the HGN, which was that Renz had six of the six clues for intoxication on this test and, based on his training, that means Renz had "at least .10 [alcohol concentration] or better." The County then notes that the court, in response to defense counsel's foundation objection and motion to strike made directly following this testimony, stated that the objection was sustained, and also stated: "You can so move for future testimony. But the objection is untimely as for what he has said already." Based on this comment, the County apparently takes the position that the court did not strike any of the officer's testimony on the HGN test up to the time the objection was made. That is a reasonable reading of the record up to that point. However, the County overlooks the extensive argument by the prosecutor and the court's comments and rulings that followed. The court explained that in its view expert testimony was needed both to establish that the HGN was a valid indicator of intoxication and that a trained lay person could accurately administer the test. The court concluded by saying: "I need some authority that it's as reliable, or reliable at all probative [sic], as are these other things that a lay person can observe. Sustained."

Then, when the court reviewed the evidence of intoxication in the context of deciding whether there was probable cause at the time Officer Drayna requested a PBT, the court stated: "And

After administering the field sobriety tests, Officer Drayna asked Renz to provide a breath sample for the PBT, and Renz did so. The result of that test was .18. The officer then placed Renz under arrest. Renz was cooperative throughout his contact with Officer Drayna.

The trial court ruled that the initial stop was lawful because the officer, upon hearing the exhaust even though the windows were rolled up and the radio was on, had probable cause to stop Renz for an equipment violation and at least reasonable suspicion to investigate.[3]

---

then we have HGN, which has been suppressed." There is no comment from the prosecutor indicating that the prosecutor did not understand that the court had excluded the HGN testimony, and defense counsel's argument to the court indicates that he understood the court had excluded it. The only conclusion we can draw from the record is that, in spite of the court's initial comments indicating it was not excluding or striking Officer Drayna's testimony on the HGN up to the point the objection was made, it ultimately decided to do so. The County could have, but did not, argue on this appeal that the trial court's decision should be affirmed because it erroneously excluded the HGN testimony and, with that testimony, there was probable cause to request a PBT. *See State v. Patricia A.M.*, 176 Wis. 2d 542, 549, 500 N.W.2d 289, 292 (1993) (we may affirm a trial court's decision on an alternative basis). We therefore do not address the correctness of the court's decision to exclude the HGN testimony.

[3] At the close of Officer Drayna's testimony, Renz's counsel asked for the opportunity to brief the issue of whether the muffler statute was unconstitutionally vague. Renz's counsel explained that, in his view the officer's testimony had disclosed a "subjective component" to his determination that called into question the constitutionality of the statute. The trial court stated that Renz should have raised this issue earlier, and

With respect to the PBT, the court construed the statutory language to require a lower level of probable cause to request a PBT than that needed to make an arrest. The court carefully evaluated and commented on the evidence. It noted that there was "considerable evidence" that Renz was not under the influence of an intoxicant and it reviewed that evidence.[4] In the court's view, the evidence that he "might be" under the influence of an intoxicant was the odor of intoxicants, Renz's admission that he drank three beers earlier, losing his balance on the heel-to-toe test and not keeping his heel and toe touching when walking as instructed, and missing the tip of his nose with his left hand on the finger-to-nose test. Based on that evidence, the court concluded the officer "marginally had probable cause to request a [PBT]." At the time the court made this ruling, Drayna had not yet testified that by "losing balance" on the heel-to-toe test he meant stepping off the imaginary line; that while performing the finger-to-nose test Renz maintained his balance; and that Renz swayed during the heel-to-toe test. After

denied the request to brief it. However, the court also stated that Renz's request to brief the issue preserved the issue for appeal.

[4] The court considered the following as evidence that Renz was not under the influence of an intoxicant even though he admitted he had been drinking beer: no slurred speech, no bad driving, correctly reciting the alphabet, walking the correct number of steps, turning on the heel-to-toe test correctly, touching the tip of his nose with his right hand, and standing for approximately eighteen seconds on one foot without having to drop it to maintain balance. With respect to the last piece of evidence, the court considered that standing on one leg for eighteen seconds was "not bad for a sober person" and considered this to be evidence that Renz was not under the influence of an intoxicant, rather than evidence that he was.

hearing this additional testimony, the court reaffirmed its ruling that this was a case of "marginal probable cause," with the first two pieces of additional testimony favoring Renz and the third favoring the County. The court also ruled that, with the PBT results, there was probable cause to arrest for OWI.

## DISCUSSION

*Vagueness Challenge § 347.39, STATS.*

■

We first address Renz's contention that the muffler statute violates the due process clause because it is vague.[5] This presents a question of law, which we review de novo. *See State v. Pittman*, 174 Wis. 2d 255, 276, 496 N.W.2d 74, 83 (1993). The presumption is that the statute is constitutional and the challenger has the burden of showing beyond a reasonable doubt that it is

---

[5] Section 347.39, STATS., provides:

**Mufflers. (1)** No person shall operate on a highway any motor vehicle subject to registration unless such motor vehicle is equipped with an adequate muffler in constant operation and properly maintained to prevent any excessive or unusual noise or annoying smoke. This subsection also applies to motor bicycles.

**(2)** No muffler or exhaust system on any vehicle mentioned in sub. (1) shall be equipped with a cutout, bypass or similar device nor shall there be installed in the exhaust system of any such vehicle any device to ignite exhaust gases so as to produce flame within or without the exhaust system. No person shall modify the exhaust system of any such motor vehicle in a manner which will amplify or increase the noise emitted by the motor of such vehicle above that emitted by the muffler originally installed on the vehicle, and such original muffler shall comply with all the requirements of this section.

**(3)** In this section, "muffler" means a device consisting of a series of chambers of baffle plates or other mechanical design for receiving exhaust gases from an internal combustion engine and which is effective in reducing noise.

not. *State v. White*, 180 Wis. 2d 203, 213, 509 N.W.2d 434, 437 (Ct. App. 1993). A statute or ordinance is unconstitutionally vague if, because of some ambiguity or uncertainty in the gross outlines of the conduct prohibited, persons of ordinary intelligence do not have fair notice of the prohibition, and those who enforce the laws lack objective standards and may operate arbitrarily. *Pittman*, 174 Wis. 2d at 276, 496 N.W.2d at 83. The first part of the test is concerned with whether the statute or ordinance sufficiently warns persons who wish to obey the law that their conduct comes near the proscribed area. *Id.* The second part is concerned with whether those who enforce and apply the law may do so without creating or applying their own standards. *Id.*

If, by the ordinary process of statutory construction, we can give practical or sensible meaning to the statute, it is not void for vagueness. *State v. Smith*, 215 Wis. 2d 84, 91–92, 572 N.W.2d 496, 498–99 (Ct. App. 1997). The ordinary process of statutory construction begins with the language of the statute, which we interpret according to its common meaning. *See State v. Sample*, 215 Wis. 2d 486, 494, 573 N.W.2d 187, 190 (1998).

Renz argues that the statute provides no objective standard for law enforcement personnel and therefore permits them to create their own subjective standards and to operate arbitrarily.[6] In particular, he contends that the terms "excessive" and "unusual" to describe "noise" simply call for subjective opinions of individuals, and he contrasts this language with that of an anti-noise ordinance found not unconstitutionally vague in

[6] We do not understand Renz to argue that the statute does not give fair notice of the proscribed conduct to a person who wishes to comply.

434

*City of Madison v. Bauman*, 162 Wis. 2d 660, 676–79, 470 N.W.2d 296 (1991). That ordinance prohibited a person from "making any noise tending to unreasonably disturb the peace and quiet of persons in the vicinity thereof. . . ." *Id.* at 665, 470 N.W.2d at 297. The court rejected the argument that "unreasonably" depended upon a subjective reaction of one in the vicinity, holding that it provided a sufficient standard to prevent excessive discretion and guide people in their conduct. *Id.* at 681, 470 N.W.2d at 304. While acknowledging that what is reasonable always depends on the circumstances, the court decided that the circumstances were sufficiently spelled out in the ordinance: what a reasonable person would conclude would disturb the peace and quiet of the vicinity. *Id.* at 678, 470 N.W.2d at 302.

*Bauman* undercuts, rather than supports, Renz's position. The ordinary rules of statutory construction permit us to use a dictionary to ascertain the common meaning of statutory language, and consulting a dictionary for that purpose does not render a statute ambiguous. *See Sample*, 215 Wis. 2d at 498–99, 573 N.W.2d at 192.[7] The dictionary definition of "excessive" is "exceeding a normal, usual, reasonable, or proper limit." AMERICAN HERITAGE COLLEGE DICTIONARY 477 (3d ed. 1995). Thus excessive noise means "unreasonable noise"; and the concept of reasonableness is sufficiently definite to satisfy the vagueness test if the circum-

---

[7] We do not suggest that a statute is unconstitutionally vague simply because it is ambiguous. If the ordinary rules of statutory construction result in a practical or sensible meaning, the statute is not unconstitutionally vague. *See State v. Chippewa Cable Co.*, 21 Wis. 2d 598, 606, 124 N.W.2d 616, 620 (1963).

stances are sufficiently spelled out. *See Bauman*, 162 Wis. 2d at 681, 470 N.W.2d at 304.

Renz argues that the statute does not sufficiently spell out the circumstances within which the judgment of excessive or unusual noise is to be made. We disagree. The first subsection requires that a vehicle be equipped with "an adequate muffler in constant operation and properly maintained to prevent any excessive or unusual noise. . . ." Section 347.39(1), STATS. The second subsection prohibits specific modifications to a muffler or exhaust system, as well as any modification that "will amplify or increase the noise emitted by the motor of such vehicle above that emitted by the muffler originally installed on the vehicle, and such original muffler shall comply with all the requirements of this section." Section 347.39(2). The third section defines "muffler." These sections make clear that excessive or unusual noise is to be judged against the noise emitted by a muffler that meets the statutory requirements when originally installed on the vehicle. This is a sufficiently specific context in which to judge the reasonableness of the noise emitted by a muffler.

■

Looking to the manner in which Officer Drayna interpreted the ordinance, we are persuaded, as was the court in *Bauman*, that the officer understood and properly applied the statutory standard. *See Bauman*, 162 Wis. 2d at 680–81, 470 N.W.2d at 304. Officer Drayna understood that the standard for a reasonable, usual or normal amount of noise was that amount of noise emitted when a muffler was originally installed on a car. He knew what that sounded like and he knew this sound was louder, so loud that he could hear it with his windows up and his radio on. His judgment that the muffler was defective and the noise was

436

greater than that of a car with a properly maintained muffler was confirmed by Renz, who acknowledged that the muffler "had leaks and was loud." We conclude § 347.39, STATS., does provide an objective standard for law enforcement officers to employ and Officer Drayna applied that standard, not an arbitrary or subjective one, when he stopped Renz. The statute is not unconstitutionally vague.

*Interpretation of "Probable Cause" for PBT*

██

Renz argues that the trial court erred in interpreting the "probable cause" required for a PBT under § 343.303, STATS., to be a lesser standard than probable cause to arrest for a violation of the OWI statute, § 346.63(1)(a), STATS. This presents an issue of statutory construction, a question of law, and our review is de novo. *See State v. Setagord*, 211 Wis. 2d 397, 405–06, 565 N.W.2d 506, 509 (1997). The purpose of statutory interpretation is to discern the intent of the legislature. *Id.* To do so, we first consider the language of the statute. If the language of the statute clearly and unambiguously sets forth the legislative intent, we apply that to the case at hand and do not look beyond the statutory language to ascertain its meaning. *Id.* A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *Id.* at 406, 565 N.W.2d at 510. If a statute is ambiguous, we look to the scope, history, context, subject matter and object of the statute in order to ascertain legislative intent. *Id.*

Section 343.303, STATS., provides in part:[8]

---

[8] Section 343.303, STATS., provides in full:

If a law enforcement officer has probable cause to believe that the person is violating or has violated s. 346.63(1) . . . the officer, prior to an arrest, may request the person to provide a sample of his or her breath for a [PBT] using a device approved by the department for this purpose. The result of the [PBT] may be used by the . . . officer for the purpose of deciding whether or not the person shall be arrested for a violation of s. 346.63(1) . . . and whether or not to require or request chemical tests as authorized under s. 343.305(3).

**Preliminary breath screening test.** If a law enforcement officer has probable cause to believe that the person is violating or has violated s. 346.63(1) or (2m) [under age 19] or a local ordinance in conformity therewith, or s. 346.63(2) or (6) or 940.25 or s. 940.09 [relating to injury or homicide caused by operating vehicle while under the influence of an intoxicant] where the offense involved the use of a vehicle, or if the officer detects any presence of alcohol, a controlled substance, controlled substance analog or other drug, or a combination there of, on a person driving or operating or on duty time with respect to a commercial motor vehicle or has reason to believe that the person is violating or has violated s. 346.63(7) [relating to commercial motor vehicle] or a local ordinance in conformity therewith, the officer, prior to an arrest, may request the person to provide a sample of his or her breath for a preliminary breath screening test using a device approved by the department for this purpose. The result of this preliminary breath screening test may be used by the law enforcement officer for the purpose of deciding whether or not the person shall be arrested for a violation of s. 346.63(1), (2m), (5) or (7) or a local ordinance in conformity therewith, or s. 346.63(2) or (6), 940.09(1) or 940.25 and whether or not to require or request chemical tests as authorized under s. 343.305(3). The result of the preliminary breath screening test shall not be admissible in any action or proceeding except to show probable cause for an arrest, if the arrest is challenged, or to prove that a chemical test was properly required or requested of a person under s. 343.305(3). Following the screening test, additional tests may be required or requested of the driver under s. 343.305(3). The general penalty provision under s. 939.61(1) [declares that when no penalty is expressed, maximum $200 forfeiture applies] does not apply to a refusal to take a preliminary breath screening test.

■ Renz's interpretation of the statute is a reasonable one. Probable cause in the context of arrest is well defined in the case law. It refers to that quantum of evidence that would lead a reasonable police officer to believe that a person probably committed a crime, *State v. Paszek*, 50 Wis. 2d 619, 624, 184 N.W. 839 (1971), or, in this context, committed a violation of § 346.63(1), STATS. *See State v. Babbitt*, 188 Wis. 2d 349, 356, 525 N.W.2d 102, 104 (Ct. App. 1994). The evidence giving rise to such probable cause need not be sufficient to prove guilt beyond a reasonable doubt, nor sufficient to prove that guilt is more probable than not; it is only necessary that the information lead a reasonable officer to believe that guilt is more than a possibility. *Paszek*, 50 Wis. 2d at 625, 184 N.W.2d at 839. It is reasonable to assume that the legislature was well aware of this case law definition when it chose the words "probable cause to believe that a person is violating or has violated s. 346.63(1)."

The County responds that the probable cause required to request a PBT must be a lesser standard than the probable cause required for an arrest after a PBT is administered because otherwise the PBT is not necessary. We understand this to be the trial court's rationale as well. We grant this is also a reasonable interpretation of the statute; however, after considering the purpose, context and history of the statute, we conclude that the more reasonable interpretation is that the probable cause required for a PBT is the same standard as probable cause to arrest for a violation of § 346.63(1)(a), STATS.[9]

---

[9] Our discussion is cast in terms of violations of § 346.63(1)(a), STATS., but applies to the other statutes enumerated in § 343.303, STATS., namely § 346.63(2), (2m), (6), § 940.25,

We observe first that in § 343.303, Stats., the legislature has chosen a different term to describe the standard for administering a PBT test with respect to operators of commercial vehicles—detecting "any presence" of an intoxicant or having "reason to believe" the person violated § 346.63(7), Stats. Section 346.63(7) is stricter than § 346.63(1) in that it prohibits a person operating a motor vehicle from having an alcohol concentration above 0.0, operating or being on duty within four hours of drinking any intoxicating beverage and possessing an intoxicating beverage.[10] The legislature's choice of "reason to believe" as the standard necessary to trigger a request for a PBT test with regard to the stricter statute indicates that the legislature could have used a term other than "probable cause" to trigger a request for a PBT with respect to the § 346.63(1),[11] but chose not to.[12]

---

Stats., or § 940.09, Stats., where the offense involved the use of a vehicle.

[10] In contrast, § 346.63(1)(a), Stats., prohibits operating "under the influence of an intoxicant" and the prohibited alcohol concentration under para. (1)(b) is .1 or .08 depending on the number of prior convictions, revocations or suspensions. *See* § 340.01(46m), Stats.

[11] Section 343.303(3), Stats., was originally enacted by Laws of 1981, ch. 20, § 1568b, and did not contain any reference to violations of § 346.63(7), Stats., which did not then exist. When § 346.63(7) was created, § 343.303 was amended to address PBT tests for potential violators of § 346.63(7). *See* 1989 Wis. Act 105, §§ 249 and 173.

[12] A similar difference in treatment of violations of §§ 346.63(1) and 346.63(7), Stats., is reflected in the implied consent law, § 343.305(3), Stats., under which blood, breath or urine tests may be requested "[u]pon arrest of a person for a violation of s. 346.63(1). . .," § 343.305(3)(a), Stats., but may be requested from persons "prior to arrest" if the officer detects

Indeed, the legislative history of § 343.303, STATS., shows that, during the process that led to its enactment,[13] the senate considered and rejected substituting "reason to believe . . . a person is violating or has violated s. 346.63(1) . . ." for the proposed language "probable cause to believe. . ." in the first sentence.[14] There was also a draft proposing "[i]f a law enforcement officer reasonably suspects the person is violating or has violated s. 346.63(1). . . ." as the standard.[15] While we are unaware of case law establishing the meaning of "reason to believe" in a similar or analogous context, the term "reasonable suspicion" has a well-developed meaning in Fourth Amendment case law. Temporary detentions for the purpose of investigation are seizures within the meaning of the Fourth Amendment and are constitutionally permissible if the officer has a reasonable suspicion that some kind of criminal activity has been or will be committed, *Terry*

---

"any presence of alcohol" or "has reason to believe the person is violating or has violated s. 346.63(7)." Section 343.305(3)(am). A refusal to submit to the tests under § 343.305(3) may result in license revocation. *See* § 343.305(9) and (10).

[13] From a review of the legislative history, it seems that a bill with language similar to § 343.03, STATS., was first introduced as 1981 S.B. 310. Although S.B. 310 never passed, the language later appeared in Senate Amendment 125 (offered by the same senator as S.B. 310) to 1981 A.B. 66 (the budget bill) and eventually became law. *See* Laws of 1981, ch. 20, § 1568b. For purposes of this opinion, we consider the histories of both S.B. 310 and A.B. 66.

[14] Legislative Reference Bureau (LRB) Draft of Senate Substitute Amendment 1 to 1981 S.B. 310 (LRBs0150/1) (Jun. 11, 1981).

[15] LRB Draft of Senate Amendment 125 to 1981 A.B. 66 (LRBb1636/1).

*v. Ohio*, 392 U.S. 1, 22 (1968), or if a traffic violation has been or will be committed. *See State v. Gaulrapp*, 207 Wis. 2d 600, 605, 558 N.W.2d 696, 698 (Ct. App. 1996). *See also* § 968.24, STATS.[16] (codifying the *Terry* standard). Reasonable suspicion in this context is a lesser standard than probable cause to arrest and exists when specific and articulable facts available to the officer, together with the rationale inferences from those facts, would warrant an officer of reasonable caution to suspect criminal activity. *See State v. Goebel*, 103 Wis. 2d 203, 208–09, 307 N.W.2d 915, 918 (1981) (citing *Terry*, 392 U.S. at 21–22).

The fact that the legislature did not adopt the "reason to believe" or "reasonable suspicion" language, but instead adopted "probable cause to believe," is a persuasive indicator that it intended to adopt the probable cause standard as defined in the case law, rather than a lesser standard.

We acknowledge that requiring probable cause to arrest before requesting a PBT limits the conditions under which a PBT may be requested and undercuts the use of a PBT to establish probable cause to arrest. However, it does not deprive § 343.303, STATS., of all meaning or function. Even if an officer has probable cause to arrest, he or she may decide to request a PBT

---

[16] Section 968.24, STATS., provides:

**Temporary questioning without arrest.** After having identified himself or herself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of the person's conduct. Such detention and temporary questioning shall be conducted in the vicinity where the person was stopped.

first, and then use the results in deciding whether to actually make an arrest.[17]

On balance, we are persuaded that the legislature intended that an officer must have probable cause to arrest a person for a violation of § 346.63(1)(a), STATS., before the officer may request a PBT. The term "probable cause" in this context is so well defined in the case law that we would not expect the legislature to employ this term to mean something else without any indication in the statute of what that other standard might be. The legislative history supports this conclusion in that it demonstrates that other terms were considered and rejected—at least one of them carrying a well-defined meaning as a lesser standard than "probable cause."[18]

*Probable Cause Analysis in this Case*

We now turn to the question whether Officer Drayna had probable cause to arrest Renz for violating

[17] There is no statutory sanction for refusal to submit to a PBT, but that fact may be considered evidence of consciousness of guilt for purpose of establishing probable cause to arrest. *See State v. Babbitt*, 188 Wis. 2d 349, 359, 525 N.W.2d 102, 105 (Ct. App. 1994) (holding this with respect to a refusal to submit to field sobriety tests). Of course, if an officer has probable cause to arrest for a violation of § 346.63(1)(a), STATS., and the suspect refuses to take a PBT, the officer may nevertheless arrest the person, and then the implied consent statute and the sanctions for refusal to submit to intoxilyzer, blood or urine tests apply. *See* § 343.305, STATS.

[18] Renz also argues that the Fourth Amendment requires probable cause to arrest for a violation of § 346.63(1)(a), STATS., before an officer may administer a PBT. We do not reach that issue because we decide that probable cause to arrest is required by statute before an officer may request a PBT.

§ 346.63(1)(a), Stats., before requesting that he submit to a PBT. We consider all the facts and circumstances within the officer's knowledge at that time. *Paszek*, 50 Wis. 2d at 625, 184 N.W.2d at 840.[19] We do not disturb the findings of the trial court unless they are clearly erroneous. *See State v. Richardson*, 156 Wis. 2d 128, 137–38, 456 N.W.2d 830, 833 (1990). However, whether those facts meet the statutory standard is a question of law, which we review de novo. *See id.* Although our review is de novo, and although we are applying a different standard than did the trial court with respect to the PBT, we benefit from the trial court's careful analysis of the evidence. We note that the court concluded the evidence only "marginally" met a lesser standard of probable cause than we are employing in our independent review.

We begin by observing that § 346.63(1)(a), Stats., does not prohibit operating a motor vehicle after having consumed alcohol, but prohibits driving "[u]nder the influence of an intoxicant . . . to a degree which renders [one] incapable of safely driving." Therefore, although it is undisputed that Renz said he had three beers earlier in the evening and the officer detected a strong odor of alcohol, more is needed to establish probable cause to believe Renz violated the statute. We identify the following evidence that might indicate that the alcohol affected Renz's capacity to drive safely: Renz did not stand on one leg for thirty continuous seconds but put his foot down on eighteen, then started over at ten and continued to thirty; he stepped off the imaginary line at step seven on the walk-and-turn test;

---

[19] Although we are applying a statutory standard of "probable cause," we look to Fourth Amendment case law for the application of the standard because we have concluded that is what the legislature intended.

he appeared unsteady on the walk-and-turn test; he left one-half to one inch between his heel and toe on the walk-and-turn test; and he touched his left hand to the bridge of his nose rather than to the tip of his nose on the finger-to-nose test.

With respect to the finger-to-nose test, the trial court in its initial comments on probable cause stated its assumption that this tested for balance. During later cross-examination, Officer Drayna testified that this was not a test for balance but he did not explain what it did test for or the significance of touching the bridge of the nose rather than the tip of the nose.[20] The trial court apparently accepted the officer's testimony that the finger-to-nose test did not test for balance, and that Renz maintained his balance during this test, but made no findings on the purpose of this test. We assume it tests for coordination, but, without any testimony indicating the relevance of touching the bridge of one's nose rather than the tip, or any trial court findings, we cannot attach much significance to that discrepancy as an indicator of incapacity to drive safely.

Officer Drayna did not explain the significance of leaving a space of one-half to one inch between heel and toe, and the court made no findings on that. We assume this goes to either balance or ability to follow directions. However, in the absence of some explanatory testimony this evidence, too, has minimal significance for the capacity to drive safely.

It is common knowledge that unsteadiness is one symptom of intoxication and may impair the capacity to drive safely. Based on common knowledge and

---

[20] Officer Drayna testified that the finger-to-nose test is not a standardized field sobriety test; he learned it in his recruit class training and his training from the sheriff's department.

experience, swaying while walking heel to toe on the imaginary line is evidence of unsteadiness, and stepping off the imaginary line may be as well. The trial court did not consider putting one leg down after eighteen seconds rather than thirty seconds to be an indication of unsteadiness, but we conclude it may be.

We must now view the evidence indicating unsteadiness in the context of all the circumstances known to Officer Drayna. Renz's driving did not indicate that he could not drive safely. His speech was not slurred, there was no testimony that his eyes were glassy, and he was not unsteady when walking or standing apart from the field sobriety tests. He performed the alphabet test correctly. On the walk-and-turn test and the one-legged stand test, there were a number of other "clues" that Officer Drayna looked for as signs indicating intoxication, and those were not present—three on the one-legged stand and six on the walk-and-turn. With respect to the significance of the three "clues" of intoxication that Officer Drayna did observe—one on the one-legged stand and two on the walk-and-turn—Officer Drayna explained that these two tests and the HGN "are all three put together. It's a battery of tests. The clues mean nothing if you don't count them all."[21]

---

[21] Officer Drayna's testimony that the "clues" are interdependent does not mean that we cannot consider the pieces of evidence indicating unsteadiness simply because the testimony on the HGN test was not admitted. As the trial court correctly observed, it was not obligated to adopt the method and conclusions of Officer Drayna's manual, but could make its own assessment of Renz's behavior and appearance. Thus, as the court explained, even though the unsteadiness that the officer observed on the walk-and-turn did not translate into a "clue," it is relevant evidence of intoxication. And, as the court also

We conclude that the instances of Renz's unsteadiness, when considered in the context of all the evidence that he was not under the influence of an intoxicant, are minimal and do not demonstrate that there was "more than a possibility" that he was under the influence of an intoxicant to the degree that made him incapable of driving safely. We therefore conclude Officer Drayna did not have probable cause to arrest at the time he asked Renz to submit to a PBT.

We agree with Renz that since there was not probable cause to believe that Renz had violated or was violating § 343.63(1)(a), STATS., when Officer Drayna requested the PBT, the results of that test were not admissible at the hearing on Renz's motion to suppress. The statute establishes the conditions for requesting a PBT. *See State v. Beaver*, 181 Wis. 2d 959, 969, 512 N.W.2d 254 (Ct. App. 1994) ("The thrust of [343.303] is to give a police officer the authority to request a driver to submit to a PBT."). The statute also establishes the circumstances in which it is admissible. We conclude that the only reasonable construction of the statute is that the PBT is not admissible to show probable cause for arrest when an officer requested a PBT without having probable cause to believe there had been a violation of § 343.63(1)(a) or the other applicable statutes enumerated in § 343.303, STATS.[22] As we

explained, behavior that does not, to a lay person, indicate intoxication, does not become an indication of intoxication to the decision maker solely because the officer testifies it is a "clue" according to the manual.

[22] This circularity is a necessary but perhaps unsatisfactory result of our construction of "probable cause," as we have earlier acknowledged. The legislature, of course, may consider whether any changes in the statute are advisable.

have already concluded in this case, there was not probable cause to arrest without the PBT results. We therefore reverse the judgment of conviction and the trial court's order denying Renz's motion to suppress evidence.

*By the Court.*—Judgment reversed.