STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark E. NELSON, Defendant-Appellant.†

Court of Appeals

*No. 2005AP2300–CR. Submitted on briefs March 3, 2006.
—Decided May 25, 2006.*

**2006 WI App 124**

(Also reported in 718 N.W.2d 168.)

† Petition to review denied 8-30-06.

578

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert R. Henak* and *Amelia L. Bizzaro, Henak Law Office, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Becker*, asst. attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Vergeront, Deininger, and Higginbotham, J.

¶ 1. VERGERONT, J. Mark E. Nelson appeals from a judgment convicting him of two felony counts of capturing representations depicting nudity in violation of Wis. Stat. § 942.09(2)(a).[1] One of the elements of this crime is that the person videotaped "is nude in a circumstance in which he or she has a reasonable expectation of privacy." Section 942.09(2)(a). The charges arise out of Nelson's videotaping his next door neighbors while they were using their bathroom.

¶ 2. The four issues on this appeal relate to the construction and application of the phrase "reasonable expectation of privacy" in Wis. Stat. § 942.09(2)(a). The first issue is the proper construction of the phrase and, more specifically, whether the language should be construed, as Nelson contends, according to the case law that applies this phrase in the Fourth Amendment context. We conclude that it is not reasonable to construe the phrase according to Fourth Amendment case law. Instead, we conclude that the words "expectation of privacy" have their common and ordinary meaning and "reasonable" has the well-established meaning of the objective reasonable person standard.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 3. The second issue is whether WIS. STAT. § 942.09 is unconstitutionally vague if the phrase "reasonable expectation of privacy" is not construed according to Fourth Amendment case law. We conclude it is not. The third and related issue is whether we should exercise our discretionary power of reversal under WIS. STAT. § 752.35 because the jury instructions did not contain a definition of "reasonable expectation of privacy." We conclude there is no reason to reverse on this ground. The fourth issue is whether the evidence is sufficient to support Nelson's conviction. We conclude that it is.

¶ 4. Because we resolve all four issues against Nelson, we affirm the judgment of conviction.

## BACKGROUND

¶ 5. During the summer of 2004, several college students rented and lived in the second-floor apartment of the house next door to Nelson's house; two women lived in the apartment all summer, and one woman, who had arranged to live in the apartment in the fall, visited the apartment during the summer. One of the women who lived in the apartment all summer and the one who planned to live there in the fall were depicted on videotapes recovered from Nelson. The videotapes were shown to the jury and admitted into evidence. In one videotaped scene, the woman who was visiting sits on the toilet and takes out and inserts a tampon, and her pubic area is visible. Five other separate videotaped scenes depict one of the women who lived there all summer: in four scenes she is using the toilet, with her pubic area visible; in one scene she is applying lotion and her breast is briefly visible.

¶ 6. The testimony at trial established that the bathroom window on the women's second-floor apart-

ment faced Nelson's house and the distance between was ten feet and three inches. The layout of the bathroom is that the door is located on the wall directly opposite the wall with the window. The toilet is against the left-hand wall as one walks into the bathroom, and it is immediately to the left. Also on the left-hand wall is a sink and mirror, closer to the window. On the right-hand wall as one enters is a closet, across from the toilet; the closet is about four or five feet from the window.

¶ 7. The two women who lived in the apartment all summer testified as follows. The bathroom window was small and had fogged glass; there were no blinds or curtains. From the bathroom window they could see a window in Nelson's house, but that house appeared vacant. Either a for-sale or a for-rent sign was in front of the house; they never saw any lights on at the house, and they never noticed anyone around the house or going in or out of the house. One of the women testified:

> I went in and out of the house every day to class at all time [sic]. I've never seen anyone coming in the front door or out the front door. I never saw any garbage taken out in the morning . . . . Never saw any lights on in the house. There was never any noise over there. No one in the back yard. There was nothing.

¶ 8. The women who lived there all summer did not believe anyone could see into their bathroom, even when the window was open, except possibly from Nelson's house. However, because Nelson's house appeared vacant, they believed that no one could see into their bathroom. During the summer, branches and leaves from a tree blocked the view of this window from the ground, and this tree, combined with the proximity of Nelson's house to their own, made it impossible to see into their bathroom window from the ground during

the summer. If the leaves were not on the tree, someone on the ground looking into their bathroom would be able to see only a wall with a mirror on it. One of the women estimated that she was four or five feet away from the window at the time she was videotaped.

¶ 9. The woman who was videotaped while visiting also testified at trial. She did not see anyone at Nelson's house during the day or at night while she was visiting; therefore she did not believe anyone was there. The women who lived there all summer told her that an older woman lived on the other side of their apartment, but did not mention that anyone lived on Nelson's side. If she had seen anyone at Nelson's house or seen any lights on at his house, she would have shut the bathroom window.

¶ 10. Both women who were videotaped testified that they did not know they were being videotaped. They did not learn that they had been videotaped until the mother of one woman came to visit later in the summer and noticed what looked like a video camera in a window in Nelson's house. Initially, she was not sure what the object was, but when she went back to look at it again two or three minutes later, the object had disappeared. She and her daughter believed someone was watching them and called the police on August 24.

¶ 11. Two officers responded to the call. One testified that Nelson's house appeared to be vacant when he looked into it from outside—he could see a ladder and some remodeling supplies, but "no couches or anything else like that." However, Nelson did come to the door. He showed them his driver's license, which was from Florida, and told the officers that they could look around and that he did not own a video camera. The officers learned he was the landlord of the house, the renters had moved out June 1, and his permanent residence was Florida. He had been traveling back and

587

forth between Wisconsin and Florida to fix up the house for sale or for future renters, staying at the house when he worked on it.

¶ 12. One of the officers testified that when he looked around Nelson's house, he saw that the room with the window across from the women's bathroom was empty except for a vacuum cleaner. Another room had a mattress on the floor, a television with a VCR and DVD player, and a closet with videotapes on the top shelf and also in a basket underneath dirty clothes. The officer went up into the attic, where he discovered a large piece of cardboard that had been "set . . . [r]ight up by the windows," and through these windows he could see into the front rooms of the women's apartment. He also noticed a tripod and a VCR in a black bag in the attic; when he commented on the tripod to Nelson, Nelson said he needed a search warrant. A search warrant was obtained and the subsequent search produced the videotapes of the two women in their bathroom.

¶ 13. Nelson did not testify at trial. However, a third officer, who was called to assist the first two with the search warrant, testified 'that when he arrived at Nelson's house, Nelson admitted that he had filmed his neighbors, and said there would be "some nude people" on the tapes that the officers found in the search.

¶ 14. At trial, the jury was instructed in accordance with WIS JI-Criminal 1396, as follows:

> Before you may find the defendant guilty of this offense—this is as to both counts and you must consider each offense individually—the State must prove by evidence which satisfies you beyond a reasonable doubt that the following four elements were present.
>
> One, the defendant captured a representation that depicted nudity.

Two, the defendant captured the representation without the knowledge and consent of the person who is depicted nude.

Three, the person who is depicted nude was nude in a circumstance in which he or she had a reasonable expectation of privacy.

Four, the defendant knew or had reason to know that the person who is depicted nude did not know of and did not consent to the capture of the representation.

Captures a representation means takes a photograph, makes a motion picture, video tape or other visual image.

Nudity means the showing of the human male or female genitals, pubic area or buttocks, with less than a full opaque covering or the showing of the female breast . . . .

Reasonable expectation of privacy means that the person who is depicted nude had an actual expectation of privacy at the time the depiction of nudity was captured. And, that the expectation of privacy was reasonable.

¶ 15. The jury found Nelson guilty on both counts. On the first count, the court sentenced Nelson to a bifurcated sentence, consisting of one year of confinement followed by a two-year term of extended supervision; on the second count, the court imposed a consecutive four-year term of probation.

## ANALYSIS

I. Proper Construction of "Reasonable Expectation of Privacy" in Wis. Stat. § 942.09(2)(a)

¶ 16. Nelson first contends that the phrase "reasonable expectation of privacy" in Wis. Stat.§ 942.09(2)(a) must be defined according to the

case law applying that phrase in the context of the Fourth Amendment. According to Nelson, the legislative history supports this construction. So construed, he asserts, there was insufficient evidence to convict him.

¶ 17. The State responds that the phrase should be given its common and ordinary meaning because the context and purpose of WIS. STAT. § 942.09(2)(a) does not support interpreting the language as it has been defined in case law applying the Fourth Amendment, which has a significantly different context and purpose. The State also disagrees with Nelson's argument on legislative history, asserting that nothing in the legislative history indicates that the legislature intended this phrase to be defined according to Fourth Amendment case law.[2]

■■■

¶ 18. The interpretation of a statute is a question of law, which we review de novo. *State v. Tremaine Y.*, 2005 WI App 56, ¶ 9, 279 Wis. 2d 448, 694 N.W.2d 462. When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute

---

[2] The State also argues that, even if "reasonable expectation of privacy" is construed according to Fourth Amendment case law, there is sufficient evidence to convict Nelson. Because we reject Nelson's proposed construction, we do not address this issue.

insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. We do so in part because words often have multiple meanings and the applicable definition depends upon the context in which a word is used. *See id.*, ¶¶ 48–49. If this process of analysis yields a plain meaning, then there is no ambiguity and we apply that plain meaning. *Id.*, ¶ 46. However, if the statutory language is capable of being understood by reasonably well-informed persons in two or more senses, it is ambiguous and we may employ sources extrinsic to the statutory text. *Id.*, ¶¶ 47, 50. These extrinsic sources are typically items of legislative history. *Id.*, ¶ 50.

¶ 19. The phrase "reasonable expectation of privacy" is not defined in WIS. STAT. § 942.09, nor are the individual words. However, the words "expectation of privacy" have a common meaning that can be ascertained with reference to a standard dictionary. *See State v. Sample*, 215 Wis. 2d 487, 499–500, 573 N.W.2d 187 (1998) (we may consult a standard dictionary to determine the common meaning of words). The applicable common meaning of "privacy" is: "1.a. the quality or condition of being secluded from the presence or view of others." AMERICAN HERITAGE COLLEGE DICTIONARY 1089 (3d ed. 1993). The applicable common meaning of "expectation" is "7: assumption." WEBSTER'S THIRD INTERNATIONAL DICTIONARY, UNABRIDGED 799 (1993). Thus, according to common usage "expectation of privacy" means an assumption that one is secluded from the presence or view of others.

¶ 20. The word "reasonable" has a well-established meaning when used in a legal context. It generally connotes a "reasonable-person standard," a standard that "has been relied upon in all branches of the law for generations . . . ." *City of Madison v. Bau-*

*mann*, 162 Wis. 2d 660, 677–78, 470 N.W.2d 296 (1991). "The reasonable person is a reasonable person in the circumstances. It is what is '[f]it and appropriate to the end in view.' " (citing BLACK'S LAW DICTIONARY 1431 (rev. 4th ed. 1968)). *Baumann*, 162 Wis. 2d at 678. Significantly, "reasonable," or the "reasonable person standard," establishes an objective standard for evaluating conduct. *State v. Ruesch*, 214 Wis. 2d 548, 563, 571 N.W.2d 898 (Ct. App. 1997) (citation omitted). Thus, "reasonable" means what is appropriate in the circumstances according to an objective standard.

¶ 21. If we apply the common meanings of "expectation" and "privacy" and the well-established meaning of the term "reasonable," WIS. STAT. § 942.09(2)(a) requires that the person who is depicted nude is in a circumstance in which he or she has an assumption that he or she is secluded from the presence or view of others, and that assumption is a reasonable one under all the circumstances, meaning that it is an appropriate one under all the circumstances according to an objective standard. We conclude this is a reasonable construction of "reasonable expectation of privacy" because it employs the common and well-established meanings of the words.

¶ 22. Nelson does not directly argue that this construction is not a reasonable one. Rather, he asserts that "reasonable expectation of privacy" is a legal term of art that has been defined in Fourth Amendment case law, and the legislature intended that it have the same meaning in WIS. STAT. § 942.09(2)(a). Under this case law, he continues, there is no reasonable expectation of privacy in something that is in plain view from a place where a police officer has a right to be, *see, e.g., State v. Bell*, 62 Wis. 2d 534, 540, 215 N.W.2d 535 (1974), and

the women in their bathroom were in plain view from Nelson's house, where he had a right to be. We are uncertain whether Nelson's position is that the construction he proposes is the only reasonable one, or that there is an ambiguity that the legislative history resolves in his favor. In either case, we must decide whether the construction he proposes is at least a reasonable one, and we turn to that question now.

■

¶ 23. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The phrase "reasonable expectation of privacy" does not appear in the Fourth Amendment itself but is the concept, also referred to as "legitimate expectation of privacy," that has been developed by case law to define when a search or seizure within the meaning of the Fourth Amendment has occurred in the first instance. *See State v. Rewolinski*, 159 Wis. 2d 1, 12–13, 21, 464 N.W.2d 401 (1990). The determination of whether a defendant has a reasonable expectation of privacy for Fourth Amendment purposes involves two separate inquiries: first, whether he or she has "exhibited an actual, subjective expectation of privacy" and, second, "whether such an expectation is legitimate or justifiable in that it is one that society is willing to recognize as reasonable." *Id.* at 13 (citations omitted). In answering the second question, the court "balanc[es] the interest of society in permitting the government conduct to occur and the privacy interest asserted by the individual."[3] *Id.* at 17. If

---

[3] In the Fourth Amendment context, the question whether the undisputed facts or the facts found by the circuit court give rise to a legitimate expectation of privacy on the part of the

the defendant establishes that he or she had a reasonable or legitimate expectation of privacy that was invaded by government action, then a search or seizure has occurred within the meaning of the Fourth Amendment. *Id.* at 12–13. The court then decides whether the government's action was reasonable and, thus, permissible under the Fourth Amendment. *Id.* at 13.

¶ 24. In the Fourth Amendment context, then, the concept of reasonable expectation of privacy embodies a balance between society's interest in law enforcement and the privacy interest asserted by the individual.[4] *Id.* at 17. We conclude this meaning of the phrase is not consistent with the context and purpose of WIS. STAT. § 942.09 as expressed in the statutory text. The evident purpose of § 942.09 is to penalize individuals who capture representations of others who are nude—and individuals who reproduce, possess, distribute, or exhibit those representations—in circumstances that invade the privacy of those depicted, when the offenders have no legitimate reason for doing so. A balancing of society's interest in law enforcement against the depicted person's interest in privacy is not a relevant standard in this context because law enforcement is not the invader of the depicted person's privacy. As for balancing the interest of the offenders under § 942.09 against the depicted person's interest in privacy, the legislature has already made the judgment

defendant is a question of law decided by the court. *See State v. Rewolinski*, 159 Wis. 2d 1, 17, 464 N.W.2d 401 (1990).

[4] To the extent that Nelson argues in his reply brief that "reasonable expectation of privacy" in the Fourth Amendment context is determined without consideration of the government's or society's interest in law enforcement, he is mistaken. *Rewolinski*, at 12–13, 21.

594

that, in the circumstances described in the statute, the offender does not have a legitimate interest in capturing representations depicting nudity. In short, there is nothing to balance.

¶ 25. Nelson apparently believes it is feasible to apply the holdings of cases decided under the Fourth Amendment regarding when there is and is not a reasonable expectation of privacy and at the same time to ignore the balancing of the particular interests that courts employ to arrive at the holdings. This is not a coherent or rational way to interpret the phrase "reasonable expectation of privacy" in WIS. STAT. § 942.09(2)(a).

¶ 26. Because we conclude that Nelson's proposed construction is not reasonable, we could end our analysis here, without considering his argument on legislative history. *See Kalal*, 271 Wis. 2d 633, ¶ 51 (generally legislative history is not consulted except to resolve an ambiguity in the statutory language). However, we choose to address the legislative history to explain why we do not view it as supporting Nelson's proposed construction. *See id.* (legislative history is sometimes consulted to confirm or verify a plain meaning interpretation).

¶ 27. Nelson's legislative history argument begins with *State v. Stevenson*, 2000 WI 71, 236 Wis. 2d 86, 613 N.W.2d 90, which considered a prior version of WIS. STAT. § 942.09(2)(a), codified at WIS. STAT. § 944.205(2)(a) (1997–98):

**(2)** Whoever does any of the following is guilty of a Class E felony:

(a) Takes a photograph or makes a motion picture, videotape or other visual representation or reproduction that depicts nudity without the knowledge and

595

consent of the person who is depicted nude, if the person knows or has reason to know that the person who is depicted nude does not know of and consent to the taking or making of the photograph, motion picture, videotape or other visual representation or reproduction.

The issue before the *Stevenson* court was a First Amendment challenge to § 944.205 on overbreadth grounds. *Stevenson*, 236 Wis. 2d 86, ¶ 1. The defendant had videotaped his ex-girlfriend from the roof and from a tree outside her bedroom window while she was undressing, without her knowledge or consent. *Id.*, ¶¶ 2–4. The court noted that the defendant's conduct was not protected by the First Amendment, *id.*, ¶ 16, but the court concluded the statute was overbroad because it prohibited "all visual expression of nudity without explicit consent, including political satire and newsworthy images," *id.*, ¶ 21, as well as all reproductions of depictions of nudity, even if they were artistic masterpieces or had a health or educational purpose. *Id.*, ¶ 22.

¶ 28. The State in *Stevenson* agreed the statute was overbroad on its face, and proposed that the court construe the statute to make it constitutional by adding, after "without the knowledge and consent of the person who is depicted nude," the phrase "while that person is nude in circumstances where they have a reasonable expectation of privacy." *Id.*, ¶ 24. The court acknowledged that this additional language would "rid the statute of its sweeping reach and rein in its application to conduct like that in which Stevenson has engaged," because it would have required the person depicted to have a reasonable expectation of privacy in the circumstances in which he or she was depicted, and would have required that the person depicted be con-

596

temporaneously present at the time of the depiction. *Id.*, ¶¶ 25, 28. However, the court observed, the contemporaneous requirement the State proposed to read into the statute would be inconsistent with the term "reproduction" in WIS. STAT. § 944.205. *Id.*, ¶ 38. Ultimately the court declined to construe the statute to make it constitutional because it was the legislature's job to "craft a clear and precise statute that reconciles the tension between the core concerns of privacy and free expression." *Id.*, ¶ 29, *and see id.*, ¶ 40.

¶ 29. The following year the legislature amended WIS. STAT. § 944.205, and one of the changes was the addition of this language to subsec. (2)(a): "while that person is nude in a place and circumstance in which he or she has a reasonable expectation of privacy."[5] 2001 Wis. Act 16, § 3956. The Legislative Reference Bureau analysis of the bill that introduced this amendment describes the amendment as "narrow[ing] the scope of the prohibition against making an original representation that depicts nudity by requiring that, at the time the representation is made, the subject of the depiction be . . . in a place and circumstance in which he or she

---

[5] The entire amendment to WIS. STAT. § 944.205(2)(a) was:

944.205 (title) ~~(Photographs, motion pictures, videotapes or other visual representations~~ Recordings showing nudity.

944.205(2)(a) ~~(Takes a photograph or makes a motion picture, videotape or other visual representation or reproduction that depicts~~ Records an image of nudity without the knowledge and consent of the person who is depicted nude while that person is nude in a place and circumstance in which he or she has a reasonable expectation of privacy, if the person recording the image knows or has reason to know that the person who is depicted nude does not know of and consent to the ~~taking or making of the photograph, motion picture, videotape or other visual representation or reproduction~~ recording.

2001 Wis. Act 16, § 3952 (title) and § 3956.

can reasonably expect privacy." Drafting records of 2001 Wis. Act 16, SB 55, LRB analysis of component draft 0795/P1, Crimes related to computers, obscenity, nudity, and pornography. A short time later, in 2001 Wis. Act 33, §§ 2, 5 and 11, the legislature amended § 944.205 again, renumbering the statute, moving it out of the chapter on "Crimes Against Morality" and into WIS. STAT. ch. 942, "Crimes Against Reputation, Privacy and Civil Liberties," and changing the language to that of the current WIS. STAT. § 942.09.

¶ 30. It is apparent from the legislative records the parties provide us that the changes in the language of the statute in both 2001 Wis. Act 16 and 2001 Wis. Act 33 were made in an effort to narrow the breadth of the statute in response to *Stevenson. See* drafting records for 2001 Wis. Act 16, SB 55, LRB Analysis of Component Draft 0795/1, Crimes Related to Computers, Obscenity, Nudity, and Pornography; *see also* drafting records for 2001 Wis. Act 33, AB 60, LB-1325, Drafting Request for Mark Gundrum of December 5, 2000. However, the majority opinion in *Stevenson* does not refer to the Fourth Amendment at all, either in its discussion of the State's proposed addition of "reasonable expectation of privacy" or otherwise.[6] We see no

_____

[6] The dissent in *State v. Stevenson*, 2000 WI 71, ¶ 55, 236 Wis. 2d 86, 613 N.W.2d 90, refers once to the Fourth Amendment as follows:

> The majority distinguishes the *Osborne* line of cases on the grounds that a scienter element is a presumption in criminal law. However, the concept of "reasonable expectation of privacy" is also widespread in criminal law, particularly in Fourth Amendment litigation. Reading a "reasonable expectation" requirement into a privacy law is as natural as grafting a scienter element onto criminal laws.

We conclude that this general observation made by the *Stevenson* dissent is not persuasive authority for the proposi-

need to construe that phrase according to Fourth Amendment law in order to remedy the unconstitutional overbreadth identified by the *Stevenson* court. *See Stevenson*, 236 Wis. 2d 86, ¶ 22. Finally, nothing in the drafting records of the amendments refers to the Fourth Amendment or otherwise comments on the meaning of the phrase "reasonable expectation of privacy," beyond indicating that it has a narrowing function.

¶ 31. Nelson points out that the State did mention the Fourth Amendment in its brief in *Stevenson.* The State's brief argued for a construction of the statute "limited to circumstances in which the subject of a nude picture retained a reasonable expectation of privacy which was invaded without consent," and in that context stated: "[w]hether there is a reasonable expectation of privacy under the circumstances is a familiar inquiry which underlies all Fourth Amendment litigation. *See, e.g., State v. Dixon,* 177 Wis. 2d 461, 466–69, 501 N.W.2d 442 (1993)." Because the assistant attorney general on that brief was involved in drafting one of the post-*Stevenson* amendments, Nelson views the reference to the Fourth Amendment in the State's *Stevenson* brief as indicative of legislative intent.

¶ 32. We disagree. The legislative history Nelson provides is devoid of any suggestion that the legislature was aware of the State's brief in *Stevenson*, or that anyone, including the assistant attorney general who wrote it, referred to the Fourth Amendment in the drafting or amendment process. *See* drafting records for 2001 Wis. Act 33, AB 60, LRB-1325, correspondence

tion that, had the majority added "reasonable expectation of privacy" to Wis. Stat. § 944.205 as the State had advocated, the majority would have defined that language as it is defined under Fourth Amendment case law.

and e-mail from Thomas Balistreri dated December 8, 2000, December 14, 2000, and January 2, 2001. What the assistant attorney general might have had in his mind, uncommunicated to others in the drafting and amendment process, has no bearing on the legislature's intent in adding the phrase "reasonable expectation of privacy."

¶ 33. We conclude that "reasonable expectation of privacy" in Wis. Stat. § 942.09(2)(a) means that the person who is depicted nude is in a circumstance in which he or she has an assumption that he or she is secluded from the presence or view of others, and that assumption is a reasonable one under all the circumstances, that is, an appropriate one under all the circumstances according to an objective standard. This construction employs the common and well-established meaning of the words and is consistent with the context and purpose of the statute as expressed in the text. The legislative history does not support a different construction.[7]

---

[7] Nelson also points out that the comments to Wis JI—Criminal 1396 state:

> The statute uses the term "reasonable expectation of privacy," which is most commonly used in the 4th Amendment context. The definition included in this instruction, [that the person depicted nude had an actual expectation of privacy at the time the depiction of nudity was captured; and that the expectation of privacy was reasonable,] is based on the one used in 4th Amendment cases. See, for example, *Katz v. United States,* 389 U.S. 347 (1967).

This comment does not purport to be an analysis of whether "reasonable expectation of privacy" was intended by the legislature to import all Fourth Amendment case law applying this term, as Nelson argues. Moreover, there is no need to resort to Fourth Amendment case law, as opposed to the language of the statute, to arrive at the definition the comment refers to: the

## II. Vagueness Challenge

¶ 34. Nelson contends that if we do not construe "reasonable expectation of privacy" in WIS. STAT. § 942.09(2)(a) according to Fourth Amendment case law, the statute is unconstitutionally vague and therefore violates his right to due process.

¶ 35. "The constitutional foundation of the vagueness challenge to a penal statute is the procedural due process requirement of fair notice." *State v. Ehlenfeldt*, 94 Wis. 2d 347, 355, 288 N.W.2d 786 (1980) (citation omitted). "A criminal statute is unconstitutionally vague if it either fails to afford proper notice of the conduct it seeks to proscribe, or fails to provide an objective standard for enforcement." *State v. Hahn*, 221 Wis. 2d 670, 677, 586 N.W.2d 5 (Ct. App. 1998) (citation omitted). The constitutionality of a statute is a question of law, which we review de novo. *State v. Pittman*, 174 Wis. 2d 255, 276, 496 N.W.2d 74 (1993). In our analysis we presume the statute is constitutional and the challenger has the burden of demonstrating that it is not. *Id.*

¶ 36. Under the first element of the test, a criminal statute does not provide fair notice if it does not "sufficiently warn people who wish to obey the law that their conduct comes near the proscribed area." *Hahn*, 221 Wis. 2d at 677 (citation omitted). However, the challenged statute " 'need not define with absolute clarity and precision what is and what is not unlawful

---

common and ordinary meaning of "[a person who] has a reasonable expectation of privacy," WIS. STAT. § 942.09(2)(a), is that the person actually has an expectation of privacy and the expectation is a reasonable one.

conduct.' " *Pittman*, 174 Wis. 2d at 276–77 (citation omitted). "A statute . . . is not void for vagueness because in some instances certain conduct may create a question about its impact under the statute," *Hahn*, 221 Wis. 2d at 677 (citation omitted), or because " 'there may exist particular instances of conduct the legal or illegal nature of which may not be ascertainable with ease.' " *State v. Hurd*, 135 Wis. 2d 266, 272, 400 N.W.2d 42 (Ct. App. 1986) (citation omitted).

¶ 37. Under the second element of the test, "a statute is vague only if a trier of fact must apply its own standards of culpability rather than those set out in the statute." *Hahn*, 221 Wis. 2d at 677 (citation omitted).

¶ 38. Nelson's argument that the phrase "reasonable expectation of privacy" is unconstitutionally vague if not construed according to Fourth Amendment case law is apparently focused on the word "reasonable." Without the definition provided by Fourth Amendment case law, he asserts, he has no way of knowing what others may consider to be a "reasonable" expectation of privacy, and decision-makers may employ their own subjective or "ad hoc" standards about what is reasonable.

¶ 39. However, this court and the supreme court have already concluded in several different contexts that the term "reasonable" does not render a statute unconstitutionally vague. In *State v. Hurd*, 135 Wis. 2d at 272–73, we held that the use of "reasonable" in "reasonable cause to suspect" in Wis. Stat. § 48.981 (1983–84) "fairly notifies a person of ordinary intelligence that if there is a reasonable basis to suspect that child abuse has occurred, that person must make a report." We pointed out that the standard of reasonableness was employed in a number of different statutes,

602

and that in the statute under discussion it meant that a prudent person would have reasonable cause to suspect child abuse, given the totality of the facts and circumstances actually known to the defendant and viewed from the standpoint of the defendant. *Id.* at 272–73.

¶ 40. In *State v. Mann*, 135 Wis. 2d 420, 423, 425–26, 400 N.W.2d 489 (Ct. App. 1986), we concluded that use of the word "reasonable" in the requirement in WIS. STAT. § 346.67(1)(c) (1983–84) that the operator of a motor vehicle involved in an accident "render to any person injured in such accident reasonable assistance" did not render that statute unconstitutionally vague. We explained: "The word 'reasonable' abounds in the statutes and case law, and '[t]he mere fact that a penal statute is so framed as to require a jury . . . to determine a question of reasonableness is not sufficient to make it too vague to afford a practical guide to permissible conduct.' *United States v. Ragen*, 314 U.S. 513, 523 (1942)." *Mann*, 135 Wis. 2d at 426.

¶ 41. In *Baumann*, 162 Wis. 2d at 677, the supreme court concluded that the use of the word "unreasonably" in an ordinance prohibiting "making any noise tending to unreasonably disturb the peace and quiet of persons in the vicinity thereof" saved the ordinance from vagueness. As we have explained in the preceding section, the court in *Baumann* held that the standard of a reasonable person was well established in the law and meant what was "[f]it and appropriate to the end in view," that is, fit and appropriate under the circumstances. *Id.* at 678. The court concluded that the ordinance "adequately spelled out" the circumstances by prohibiting music that "a reasonable person would conclude would disturb the peace and quiet of the vicinity." *Id.* The court further stated:

603

the word, "unreasonably," is the linchpin that prevents excessive discretion in the police and which gives guide to persons in respect to their conduct. In each case the concept of reasonableness is what prevents the actor from being at the mercy of the hypercritical. It is what will disturb a reasonable person that is actionable.

*Id.* at 680.

¶ 42. In *County of Jefferson v. Renz*, 222 Wis. 2d 424, 435–36, 588 N.W.2d 267 (Ct. App. 1998), *rev'd on appeal on other grounds at* 231 Wis. 2d 293, 603 N.W.2d 541 (1999), we consulted a dictionary to determine the meaning of "excessive" in the prohibition against "excessive noise" in Wis. Stat. § 347.39(1) (1995–96). We determined "excessive" meant "unreasonable," and we concluded that the concept of reasonableness in the context of the statute was sufficiently definite to avoid vagueness. *Renz*, 222 Wis. 2d at 435–36.

¶ 43. In contrast to the statutes considered in the above cases, which use the term "reasonable" (or "unreasonable") to describe the defendant's conduct, in *Ruesch*, 214 Wis. 2d at 552, 563, we considered a statute employing the term "reasonable" to describe the victim's reaction: conduct that "would cause a reasonable person to fear bodily injury to . . . or . . . death of himself or herself or a member of his or her immediate family." Wis. Stat. § 940.32(2)(a) (1995–96). We concluded that the use of "reasonable person" provided an objective standard for evaluating the defendant's conduct, thereby preventing the fact-finder from establishing its own standard. *Ruesch*, 214 Wis. 2d at 563.

¶ 44. Following the reasoning of these cases, we conclude that use of "reasonable" to describe "expectation of privacy" in the context of Wis. Stat. § 942.09 provides sufficient notice of the conduct proscribed by the statute. Use of the word "reasonable" in § 942.09

requires that a person refrain from videotaping a person who is nude, as specifically defined in WIS. STAT. § 948.11(1)(d), without the person's knowledge and consent, when that person is nude in circumstances in which the person has an expectation of privacy that is reasonable under the circumstances. The use of the word "reasonable" means that Nelson is not at the mercy of people who are nude in situations that a reasonable person would not expect to be private; rather, Nelson can determine, based on the circumstances he himself was aware of and able to observe, whether a reasonable person would have an expectation of privacy in the circumstances in which he videotaped the women nude, without their knowledge and consent, in their bathroom.

¶ 45. We recognize that in WIS. STAT. § 942.09(2)(a), the word "reasonable" does not modify terms describing the conduct of the defendant, but instead modifies the victim's expectation of privacy. However, as the court in *Baumann* explained, reasonableness as applied to the person who is disturbed by the defendant's conduct—in this sense, the victim—is in essence the same as applying the reasonableness standard to the defendant's conduct: a reasonable person in the defendant's situation would avoid making noise at a time and place that would disturb a reasonable person. *Baumann*, 162 Wis. 2d at 680. *See also Ruesch*, 214 Wis. 2d at 563. Similarly, § 942.09(2)(a) prohibits videotaping a person who is nude without his or her consent or knowledge if a reasonable person would understand that the person depicted nude is nude in a circumstance in which a reasonable person would have an expectation of privacy.[8]

---

[8] Nelson does not argue that he did not have knowledge of the circumstances that, according to the women's testimony, led

¶ 46. Considering the facts of this case, we conclude that the term "reasonable expectation of privacy" as used in the statute gave Nelson sufficient notice that his conduct in videotaping women using a second-floor bathroom in their own residence, without their knowledge and consent, approached the proscribed area of conduct. Whether there is sufficient evidence for a jury to find beyond a reasonable doubt that his conduct did come within the proscribed area is a question of the sufficiency of the evidence, *see Ehlenfeldt*, 94 Wis. 2d at 357, and we address that topic in a subsequent section.

¶ 47. Following the reasoning of *Hurd, Mann, Baumann, Ruesch* and *Renz,* we conclude that use of the word "reasonable" to describe "expectation of privacy" in the context of Wis. Stat. § 942.09 provides sufficient guidance to law enforcement, judges, and juries. The use of the term "reasonable" means that law enforcement may not arrest and charge, and jurors or judges may not convict, based on their subjective expectations of privacy or their own standards of culpability; rather, they must determine whether a reasonable person would have an expectation of privacy in the circumstances of the particular case. Indeed, a determination of what is reasonable in the circumstances of a particular case is the type of common-sense determination that juries routinely make. *See Mann,* 135 Wis. 2d at 426.[9]

---

them to have an expectation of privacy. Because Nelson does not assert that First Amendment rights are implicated, his vagueness challenge may not be based on hypothetical facts. *State v. Hahn*, 221 Wis. 2d 670, 679, 586 N.W.2d 5 (Ct. App. 1998). We therefore consider only the facts in this case.

[9] *See also,* as examples, Wis JI—Criminal 1250 (before convicting defendant of first-degree reckless injury under Wis.

¶ 48. In summary, we conclude that construing "reasonable expectation of privacy" in Wis. Stat. § 942.09 according to the common meaning of "expectation of privacy" and the well-established general meaning of "reasonable" does not render the statute unconstitutionally vague.

## III. Reversal in the Interests of Justice

¶ 49. Nelson argues that, in the absence of a definition in the jury instructions of when a person has a "reasonable expectation of privacy," the jurors were allowed to substitute their own subjective standards. Nelson recognizes that, because he did not object to the jury instructions at trial, he does not have a right to appeal on this ground. *See State v. Schumacher,* 144 Wis. 2d 388, 407–08, 424 N.W.2d 672 (1988). He therefore asks that we use our discretionary power under Wis. Stat. § 752.35 to reverse in the interests of justice.[10]

---

Stat. § 940.23(1), jury is required to determine whether "risk of death or great bodily harm was unreasonable and substantial" and whether defendant was aware of "unreasonable and substantial risk"); Wis JI—Criminal 1284B (jury may find defendant guilty of stalking under Wis. Stat. § 940.32(2e) if defendant knew or should have known his or her act would place victim "in reasonable fear of bodily injury . . ."); Wis JI—Criminal 1360 (jury is required to find defendant "had reasonable grounds to believe that interference" with emergency medical personnel might endanger safety of another before convicting defendant of obstructing emergency medical personnel under Wis. Stat. § 941.37(3)).

[10] Wisconsin Stat. § 752.35 provides:

> **Discretionary reversal.** In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason

¶ 50. We see no reason to employ our discretionary power of reversal. We have already concluded that "reasonable expectation of privacy" is properly construed using the common meaning of "expectation of privacy" and the well-established meaning of "reasonable"; and we have concluded that "reasonable" embodies an objective standard that is sufficient to guide decision-makers. There was therefore no error in not defining this term further.

IV. Sufficiency of the Evidence

¶ 51. Nelson's final argument is that the evidence was insufficient to support his conviction. Specifically, he argues the evidence was insufficient to support the jury's finding that the women he videotaped were in circumstances in which they had a reasonable[11] expectation of privacy because they used the bathroom with the window open.

¶ 52. In a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict. *Morden v. Continental AG*, 2000 WI 51, ¶ 39, 235 Wis. 2d 325, 611 N.W.2d 659 (citations omitted). If there is any credible evidence to

miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

[11] Nelson uses the term "objectively reasonable." However, we have already concluded that "reasonable" in this statute means the application of an objective standard.

support the jury's verdict, we do so. *Id.*, ¶ 38 (citations omitted). Moreover, "if there is any credible evidence, under any reasonable view, that leads to an inference supporting the jury's finding," we will not overturn the jury's finding. *Id.* (citations omitted). This is because the jury, rather than the appellate court, is to "balance the credibility of witnesses and the weight given to the testimony of those witnesses." *Id.*, ¶ 39 (citation omitted).

¶ 53. Applying this standard, we conclude the evidence was sufficient for the jury to find Nelson guilty of violating Wis. Stat. § 942.09 beyond a reasonable doubt, and, specifically, that the women videotaped had a reasonable expectation of privacy. If a jury accepted the testimony of the women and the investigating officers, there was evidence that the bathroom was on the second floor of the building; Nelson's house appeared vacant and actually was generally vacant that summer; there was a tree, located between Nelson's house and their own house, that blocked the view of the bathroom window from the ground during the summer; over ten feet separated Nelson's house from the women's house, and the women were located four or five feet from the window when Nelson videotaped them. In addition, given the detail visible on the videotapes, a reasonable jury could infer that Nelson was using a zoom feature to see the women and that he would not have been able to see them in any significant detail otherwise. Considering this evidence together, we conclude it is sufficient for a jury to find beyond a reasonable doubt that, despite opening the window, the women had a reasonable expectation of privacy when they were videotaped.

## CONCLUSION

¶ 54. The proper construction of the term "reasonable expectation of privacy" in WIS. STAT. § 942.09(2)(a) gives the words "expectation of privacy" their common and ordinary meaning, and gives "reasonable" the well-established meaning of the objective reasonable person standard. Thus construed, § 942.09 is not unconstitutionally vague, there is no basis for us to exercise our discretionary power of reversal because the jury instruction did not define the term, and the evidence was sufficient to convict Nelson. Accordingly, we affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.