[909 NYS2d 885]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v DAVID SCHREIER, Defendant.

County Court, Monroe County, October 13, 2010

**APPEARANCES OF COUNSEL**

*Lipsitz Green Scime Cambria, LLP*, Buffalo (*Daniel M. Kille-lea* of counsel), for defendant. *Michael C. Green, District Attorney*, Rochester (*James Egan* of counsel), for plaintiff.

**OPINION OF THE COURT**

JOHN L. DeMARCO, J.

Defendant has moved under CPL 290.10 for a trial order of dismissal, contending that the People failed to make a prima facie case at trial, i.e., that they failed to present legally sufficient evidence to support the charge of unlawful surveillance in the second degree (Penal Law § 250.45 [1]) or any lesser included offense(s).

In deciding this motion, the court must view the evidence presented in the light most favorable to the People (*People v Beecher*, 225 AD2d 943 [3d Dept 1996]; *People v Vasquez*, 142 AD2d 698 [2d Dept 1988]).

## Findings of Fact

Having listened to the testimony of the People's witnesses, and having reviewed the exhibits received at trial, including photographs and a videotape, the court makes certain findings of fact.

The court finds that, on and before December 24, 2008, the victim was the lawful resident of a townhouse located at 113 Gates Manor Drive in the Town of Gates, County of Monroe. The victim lived there with her young son. At approximately

7:30 A.M. on December 24th, the victim was in her bathroom on the second floor of her home, naked except for a towel on her head. She had just finished showering and was attending to her personal hygiene prior to going to work. The door to her bathroom was open to allow steam from the just-completed shower to escape the room. The victim would not have opened the door while naked if her son had not been sleeping at the time.

While the victim was toweling off and conducting her daily necessities, defendant, unbeknownst to the victim, was standing outside her front door. This door was solid with two exceptions: it had a decorative window high on the door to allow light into the apartment, and it had a security hole in the door to allow occupants of the home to see who was outside the door. The window was too high on the door for the average person, or the victim, to see someone outside the apartment standing on the other side of the door.

Through this decorative window, defendant, wearing a black glove, videotaped the victim, naked in her bathroom. The videotape—several minutes long—was received in evidence and the court has viewed it. The court notes that defendant several times used the zoom feature of his camera to obtain closer and closer views of the victim—by the court's count, the defendant used the zoom at least five times to increase his ability to view and record the victim. The court also notes that defendant moved the camera from side to side, obtaining less-obstructed views of the victim as she moved around (but always within) her bathroom. Defendant regularly adjusted the camera's focus to obtain clearer views of the victim.

After several minutes of unknowingly being recorded, the victim noticed a red light outside the decorative window on the door below; she then noticed a black-gloved hand holding a camera, after which she immediately closed the door to the bathroom.

It was dark outside at the time the recording was made.

Viewing the evidence presented in the light most favorable to the People, the court finds that defendant, under cover of darkness, recorded the victim naked in her bathroom, without her knowledge or her permission.

## Conclusions of Law

Defendant's motion for a trial order of dismissal focuses on three elements of the charged offense, contending that the

People failed to present legally sufficient evidence (1) of defendant's intent when he recorded the victim; (2) that the recording was surreptitiously made; and (3) that the victim had a reasonable expectation of privacy at the time and place the recording was made.

1. Intent

The statute here requires proof that the defendant recorded the victim "[f]or his . . . own, or another person's amusement, entertainment, or profit, or for the purpose of degrading or abusing" the victim. (Penal Law § 250.45 [1].) Defendant contends that the People's proof was "silent" as to this element. Defendant argues that an intent to amuse, entertain, profit, degrade or abuse is not inferable from the actions of the defendant here. The court disagrees.

The facts at trial show a man who, because of the thinness of the wall between his residence and the victim's, likely heard the victim showering and then stood outside the victim's front door, where he recorded her, naked, engaged in the most personal and private of acts. Under cover of darkness, defendant physically jockeyed for the best camera position, adjusted the focus for the best picture, and zoomed in on the victim's private parts. He did not delete the recording, but saved it and later handed it over to the police.

Defendant contends that the intent element of the statute as written requires more than simply proof that a recording was made, and that the legislature must have recognized that there exist noncriminal motivations for such conduct which are not proscribed by the statute. Defendant cites no authority for that proposition, however, and the court notes that defendant at no time has even suggested a possible interpretation of the facts and circumstances here that yields an inference of innocent behavior. The court is, of course, well aware of the fundamental principle that the defendant bears no burden of proof in this regard. Nevertheless, the fact that defendant does not offer—even in argument—a plausible explanation for his conduct may demonstrate just how compelling the inference of criminality is, based on the facts and circumstances of *this* case. Defendant's argument that the intent element of the statute requires proof of a reason for the recording, and not just the fact of the recording itself, is evident from the language of the statute. Such reasoning does not, however, lead to a conclusion that the People need more than facts from which a logical inference can be drawn to meet their burden of proof.

■ The court concludes that the defendant intentionally recorded the victim—toweling off after her shower, applying lotion to herself, and doing other necessaries—to entertain or amuse himself. This inference is not merely permissible, it is ineluctable (*see People v Bryant*, 13 AD3d 1170, 1171 [4th Dept 2004] ["Intent can be inferred from the act itself or from the defendant's conduct and the surrounding circumstances" (citation omitted)]; *see also People v Bracey*, 41 NY2d 296 [1977]). Given this legal conclusion, the court need not decide whether the recording was intended to degrade or abuse the victim, although the court notes that the victim suffered emotional and psychological distress after defendant's actions were discovered.

2. Surreptitiousness

Defendant next argues that the People's proof was legally insufficient on the element of surreptitiousness. That is, defendant contends that the video of the victim "was not done surreptitiously." The court disagrees.

Pertinent to this point, the statute prohibits "the utilization . . . of an imaging device to surreptitiously view, broadcast or record a person dressing or undressing or the sexual or other intimate parts of such person." (Penal Law § 250.45 [1].) Defendant does not argue that he did not use an imaging device, or that he did not record the victim dressing or undressing, or that he did not record the victim's sexual or other intimate parts. Rather, he contends that the proof at trial demonstrated first, that the inside of the victim's bathroom could be seen from outside her front door (and, conversely, that the area outside the front door could be seen from inside her bathroom); second, that the recording was made in the daylight; and third, that defendant made the recording from a legally-permitted location, without hiding behind anything and without a hidden camera.

■ Taking these arguments in order, the court finds that the proof at trial established that it would be impossible for an average-height person to see through the decorative windows of the front door into the second-floor bathroom, or that someone in the bathroom could see much if anything outside the front door. The evidence at trial also revealed that the defendant either intentionally shielded his face and body from view as he held his camera (in his black-gloved hand, above his head) in the front-door, decorative window, or that defendant didn't need to shield his face and body from view because if he stood immediately in front of the door he could not be seen by anyone in

the second-floor bathroom. In short, one can readily infer that the vast majority of people, including defendant, would be unable to see into the bathroom on the second floor from a normal position in front of the main entrance door below.

Defendant's second argument with respect to surreptitiousness is that the recording itself reveals that it was "made in the daylight, as there are reflections visible in the glass of [the victim's] front door." The court does not draw this same conclusion. Although there are certain variations in color and light on the recording, these do not demonstrate that the recording was made in the daylight. It is not seriously disputed that the video was made at or about 7:30 A.M. on December 24th. Furthermore, police testified that it was just getting light out when they arrived at the scene—well after the video had been shot and the defendant had retreated to the inside of his adjacent townhouse. Last, the victim testified that it was dark out when she was in the bathroom.

Defendant's final argument on this point is that he was permitted to stand outside the victim's door and record her—so long as he was not hiding or using a hidden camera. The proof at trial permits a reasonable inference, however, that the defendant *was* hiding, silently, in the dark, behind a solid door. And the proof permits the reasonable inference that defendant was trying to hide his camera: the victim testified that the defendant held the camera in his black-gloved hand and that until she noticed the red light of the camera she had failed to see the camera itself or the hand holding it.

But, all of the above notwithstanding, the court has a fundamental disagreement with defendant as to the meaning of "surreptitious" in the statute. The term, unlike several in article 250 of the Penal Law, is not defined. That being so, "[t]he cardinal rule in interpreting penal statutes is to give effect to the intention of the legislative body which enacted them, and such intention is determined from the language used, giving to the words their ordinary meaning" (McKinney's Cons Laws of NY, Book 1, Statutes § 272, Comment; *see also Matter of B.H. Children [Robert H.]*, 29 Misc 3d 161, 167 [Fam Ct 2010] ["statutory language is to be construed according to the ordinary meaning of the words" (citation omitted)]; *Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475, 479 [2001] ["(t)he starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (citation omitted)]; *People v Asher*, 28 Misc 3d 823 [Sup Ct, Monroe County 2010]).

Furthermore, where a statute does not itself define a word, the Court of Appeals will "construe words of ordinary import with their usual and commonly understood meaning, and in that connection ha[s] regarded dictionary definitions as useful guideposts in determining the meaning of a word or phrase" (*Rosner*, 96 NY2d at 479-480 [internal quotation marks and citations omitted]).

Surreptitious is defined by authoritative dictionaries thus: "obtained, done, made, etc., by stealth; secret or unauthorized; clandestine" (Random House Dictionary [2010]); "obtained, done, or made by clandestine or stealthy means" (The American Heritage Dictionary of the English Language [4th ed 2010]). Synonyms for surreptitious include: "stealthy, clandestine, secret, sneaky, sly, cunning, furtive, underhand, underhanded, undercover, covert" (Oxford American Thesaurus of Current English [2002]).

This court has little difficulty, when viewing the proof at trial in the light most favorable to the People, concluding that the defendant recorded the victim naked in her bathroom "surreptitiously." He obtained her image by stealthy means, he was unauthorized to record her, and, in doing so, he was sneaky, sly, cunning, furtive and underhanded.

3. Reasonable Expectation of Privacy

Finally, defendant argues that the People have failed to prove that the victim had a reasonable expectation of privacy in her bathroom at the time he recorded her. Boiled to its essence, defendant's argument is that the meaning of the phrase "reasonable expectation of privacy" can be found in criminal case law, that *that* meaning should be engrafted onto the penal statute here, and that, if it is, the court must conclude that the People have failed to make a prima facie case that the victim had a reasonable expectation of privacy at the time defendant recorded her.

██ The court disagrees with defendant's fundamental premise. Defendant has submitted no case law or legislative history suggesting, much less requiring, that a phrase defined over the years in the cauldron of Fourth Amendment search and seizure law has any application to the same words used in an entirely different context, as is the case here with a penal statute proscribing unlawful surveillance.

Furthermore, article 250 itself suggests that the phrase reasonable expectation of privacy is to be construed and understood in the specific context of unlawful surveillance:

"The following definitions shall apply to sections
250.45, 250.50, 250.55 and 250.60 of this article:

"1. 'Place and time when a person has a reasonable
expectation of privacy' means a place and time when
a reasonable person would believe that he or she
could fully disrobe in privacy." (Penal Law § 250.40
[1].)

Thus the phrase reasonable expectation of privacy is to be
understood in the specific context of a place and time where
someone could fully disrobe. The question is not, as it is in the
cases cited by defendant and in the plethora of Fourth Amend-
ment cases extant, whether an individual is *generally* exposing
some thing or activity (usually criminal conduct or allegedly
criminal conduct) to plain view. Rather, the question in the
context of unlawful surveillance is whether an individual would
reasonably expect to fully disrobe in a particular place and at a
particular time. The court finds that the specific articulation of
reasonable expectation of privacy in Penal Law § 250.40 (1), by
itself, distinguishes the meaning of the phrase here from other
uses of the phrase.

Defendant's position was persuasively rejected by the
Wisconsin Court of Appeals in *State v Nelson* (294 Wis 2d 578,
718 NW2d 168 [2006]). In *Nelson*, the court was called upon to
interpret a statute very similar to the statute here. The *Nelson*
court was urged—as this court is—to engraft the Fourth Amend-
ment meaning of reasonable expectation of privacy onto the
Wisconsin peeping tom statute. The Wisconsin Court of Appeals
declined the invitation.

In addition to using the same or similar methods of statutory
analysis as this court has above, *Nelson* rejected the easy ap-
plication of Fourth Amendment doctrine:

"The determination of whether a defendant has a
reasonable expectation of privacy for Fourth Amend-
ment purposes involves two separate inquiries: first,
whether he or she has exhibited an actual, subjec-
tive expectation of privacy and second, whether such
an expectation is legitimate or justifiable in that it
is one that society is willing to recognize as reason-
able. In answering the second question, the court
balanc[es] the interest of society in permitting the
government conduct to occur and the privacy inter-
est asserted by the individual. If the defendant
establishes that he or she had a reasonable or legit-
imate expectation of privacy that was invaded by

government action, then a search or seizure has occurred within the meaning of the Fourth Amendment. The court then decides whether the government's action was reasonable and, thus, permissible under the Fourth Amendment.

*"In the Fourth Amendment context, then, the concept of reasonable expectation of privacy embodies a balance between society's interest in law enforcement and the privacy interest asserted by the individual. We conclude this meaning of the phrase is not consistent with the context and purpose of [Wisconsin's unlawful surveillance law] as expressed in the statutory text.* The evident purpose of [the law] is to penalize individuals who capture representations of others who are nude . . . in circumstances that invade the privacy of those depicted, when the offenders have no legitimate reason for doing so. *A balancing of society's interest in law enforcement against the depicted person's interest in privacy is not a relevant standard in this context because law enforcement is not the invader of the depicted person's privacy.* As for balancing the interest of the offender[ ] under [the unlawful surveillance law] against the depicted person's interest in privacy, the legislature has already made the judgment that, in the circumstances described in the statute, the offender does not have a legitimate interest in capturing representations depicting nudity. *In short, there is nothing to balance."* (294 Wis 2d at 593-595, 718 NW2d at 175-176 [emphasis added and internal quotation marks and citations omitted].)

Several of the cases cited by defendant make this same point, if less directly *(see People v Correa*, 55 AD3d 1380 [4th Dept 2008] ["(t)he doorway to a private house is a public place for purposes of Fourth Amendment analysis"]; *People v Reynolds*, 71 NY2d 552, 557 [1988] ["(t)he purpose of the State and Federal warrant clauses is to protect people from unreasonable government intrusion into their legitimate expectations of privacy"]; *People v Mercado*, 68 NY2d 874, 876 [1986] ["(t)he expectation of privacy . . . forecloses only *unreasonable* government intrusion" (additional emphasis added)]).

## Conclusion

It is a well-established rule of statutory construction that "statutes must be construed in the light of common sense"

(Statutes § 143, Comment). "A forced, unnatural, or ridiculous construction [of a statute], which might tend to bring contempt upon the administration of justice is to be shunned, and the court must avoid interpretations which may reach an illogic never intended by the Legislature" (*id.*).

Viewing the evidence at trial in the light most favorable to the People, the court concludes that the People have made a prima facie case that defendant unlawfully, for his own amusement or entertainment, or for the purpose of degrading the victim, intentionally used an imaging device to surreptitiously record the victim's sexual or other intimate parts at a place and time when the victim had a reasonable expectation of privacy, without the victim's knowledge or consent.

Accordingly, defendant's motion for a trial order of dismissal is denied.