COURT OF APPEALS
DECISION
DATED AND FILED

December 29, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **22AP14-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CF342

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

DANIEL J. MCWILLIAM,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Jefferson County: WILLIAM V. GRUBER, Judge. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In the Jefferson County Circuit Court, Daniel McWilliam was charged with, and convicted of, four counts of capturing an

intimate representation of a person under the age of eighteen without consent, all in violation of WIS. STAT. § 942.09(2)(am)1. and (dr) (2019-20).[1] McWilliam argues on appeal that there was insufficient evidence to support each of those four convictions. We disagree and affirm the judgment of conviction.

## BACKGROUND

¶2 The following material facts are gleaned from the trial transcript.

¶3 B.[2] lived with her mother and her step-father, McWilliam, during all pertinent times. During that period, B. turned fourteen years old.

¶4 McWilliam was charged with several crimes which were the subject of a jury trial. Each of the following charges against McWilliam concerned B.:

---

[1] WISCONSIN STAT. § 942.09(2)(am)1. and (dr) state in pertinent part:

> (2)(am) Except as provided in par. (dr), whoever does any of the following is guilty of a Class I felony:
>
> 1. Captures an intimate representation without the consent of the person depicted under circumstances in which he or she has a reasonable expectation of privacy, if the person knows or has reason to know that the person who is depicted does not consent to the capture of the intimate representation.
>
> ….
>
> (dr) Except as provided in par. (bm), a person who commits a violation specified under par. (am) is guilty of a Class H felony if the person depicted in violation of par. (am) had not, at the time of the violation, attained the age of 18 years.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Pursuant to WIS. STAT. RULE 809.86, we refer to the victim of these crimes by an initial rather than by name.

sexual assault of a child; exposing his genitals to a child for the purposes of sexual arousal or gratification with intent to have sexual contact with a child; child enticement; and four counts of capturing an intimate representation of a person under the age of eighteen without consent.[3]  This appeal concerns the four counts of capturing an intimate representation of a person under the age of eighteen without consent.[4]  Nonetheless, McWilliam's acts that formed the bases for the convictions not on appeal give context to our discussion.

¶5      At trial, B. testified to the following about incidents with McWilliam which occurred during the summer of 2017.  McWilliam told her he "needed a favor."  McWilliam asked B. "to strip down completely naked, go and lay on his … bed, … and let him eat out [her] pussy."  B. refused.  On another occasion, after McWilliam found out B. had smoked cigarettes, he attempted to negotiate a "deal" with B.  McWilliam would not tell B.'s mother about the smoking if B. agreed to let him grope her genitals when they "play wrestle[d]."  McWilliam also directed B. to "strip down to [her] bra and underwear and then stand behind him in the shower and scrub his back as he was completely naked."  This happened "two or three, maybe more times a week" for roughly a month.  On one such occasion, McWilliam turned to B. and exposed his penis to her.  "[E]very time" B. told her mother about the shower incidents, B.'s mother told her "it was something not to tell [her] friends."

---

[3] McWilliam was also charged with going on a school premises without prior notification of his status as a registered sex offender and two counts of felony bail jumping.  The events that led to those charges are not pertinent to this appeal, and those charges will not be mentioned further.

[4] McWilliam does not appeal his conviction on any charges other than those for capturing an intimate representation without consent.

¶6   B. also testified at trial concerning events which led to the four counts on appeal. On September 11, 2017, B. was showering and noticed "a lifted ceiling tile." Then, where the tile should have been, B. saw "a white camera" that was "pointed directly at [her]." B. testified:

> And then I tried my best to cover myself because I didn't even know if it was recording, I didn't know its purpose. And then I got out of the shower the best I could, wrapped myself in a towel, and I was shaking because I didn't understand. [But] after the things [McWilliam] had already done, it only made sense why it was there.

¶7   B. told McWilliam and her mother about the camera. McWilliam and B.'s mother claimed to B. that the camera was there to determine who was purportedly stealing pills from the medicine cabinet in the bathroom. Both McWilliam and B.'s mother told B. not to touch the camera. B. was given further instruction by McWilliam and her mother about the camera in the shower. B.'s hands were to stay completely away from the camera. If B. moved the camera and did not move it back to the specific spot where her mother said she wanted the camera, B. would "get in trouble." McWilliam told B. "to leave [the camera] alone."

¶8   Thereafter, before showering, B. would try to cover the camera with a rag or piece of clothing or "move it away from where [she] thought it was recording." B. did not try to cover the camera before using the toilet "[b]ecause [she] thought it only pointed either at the shower or at the door." As further trial testimony mentioned, B.'s attempts at preventing the recording in the shower "didn't always work."

¶9   B.'s mother testified to the following at trial. According to her, it was McWilliam's idea to put the camera in the bathroom. B.'s mother also

4

alleged that the camera was installed because "[m]edicine was being stolen." B.'s mother never saw any footage from the camera showing anyone stealing medication.

¶10 A detective testified at trial that, pursuant to a search warrant and forensic analysis of McWilliam's electronic devices, videos of B. were found on those devices. Those videos were shown to the jury. That detective summarized for the jury material portions of the videos:

> [B.] goes into the bathroom [on September 11, 2017] and undresses and goes in the shower[.] [B.] is playing on a phone that is actually in a Ziploc bag so it didn't get wet and is singing and is fully nude…. [D]uring her shower, … [B.] looks up towards the shower head area and you can see that she notices the camera and then [there is] complete shock over her face…. [B.] backed up, eventually covered [the camera] with an item.
>
> And then there was another video of October 15, 2017 of, again, [B.] going in the shower…. [T]here were three clips of the same video[.] … [In one clip, B. is] sitting on the shower floor shaving. And in the next clip she's shaving again and in the next clip, and it's all time stamped to be one incident or one showering incident. And then there's two other videos on that same day where [B.] goes into the bathroom to use the bathroom, and as she sits down you can see her exposed buttocks.

¶11 After the State rested its case, McWilliam moved to dismiss each of the four counts of capturing an intimate representation of a person without consent on the basis that there was insufficient evidence to convict him on those four counts. The circuit court denied the motion.

¶12 The jury was instructed that the elements of capturing an intimate representation without the consent of the person depicted are that: (1) McWilliam "captured an intimate representation"; (2) he did so "without consent"; (3) B. "was depicted under circumstances in which she had a reasonable expectation of

privacy"; and (4) McWilliam "knew or had reason to know that the person who is depicted did not consent."[5]

¶13 The jury found McWilliam guilty on all counts. As noted, McWilliam appeals the convictions on the four counts of capturing an intimate representation of a person under the age of eighteen without consent.

## DISCUSSION

¶14 McWilliam argues on appeal that there was insufficient evidence that he violated WIS. STAT. § 942.09(2)(am)1. More particularly, McWilliam's arguments focus solely on the jury's determination that B. had a reasonable expectation of privacy as she used the shower on September 11, 2017 and October 15, 2017, and as she used the toilet on October 15, 2017.

### I. Standard of Review and Governing Principles.

¶15 "The question of whether the evidence was sufficient to sustain a verdict of guilt in a criminal prosecution is a question of law, subject to … de novo review." *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.

¶16 In determining whether evidence was sufficient to support a conviction, this court "consider[s] the evidence in the light most favorable to the State and reverse[s] the conviction only where the evidence 'is so lacking in probative value and force that no trier of fact, acting reasonably, could have found

---

[5] McWilliam did not dispute in the circuit court that B. was a person under the age of eighteen at all pertinent times.

guilt beyond a reasonable doubt.'" *Id.* (quoting *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990)).  Put another way, "this court will uphold the conviction if there is any reasonable hypothesis that supports it." *Id.*

¶17     The jury decides the credibility of witnesses and the weight given to evidence, and the jury resolves conflicts in testimony.  *Poellinger*, 153 Wis. 2d at 504, 506.  A jury may, "within the bounds of reason," resolve conflicts in testimony by adopting inferences consistent with guilt.  *Id.* at 506-07 (emphasis omitted).  We must accept those inferences "unless the evidence on which [each] inference is based is incredible as a matter of law." *Id.* at 507.

¶18     This court has interpreted the phrase "under circumstances in which he or she has a reasonable expectation of privacy" in WIS. STAT. § 942.09(2).  *State v. Nelson*, 2006 WI App 124, ¶21, 294 Wis. 2d 578, 718 N.W.2d 168; *State v. Jahnke*, 2009 WI App 4, ¶14, 316 Wis. 2d 324, 762 N.W.2d 696.  In *Nelson*, we concluded that the ordinary meanings of the words "expectation," "privacy," and "reasonable" "require[] that the person who is depicted nude is in a circumstance in which he or she has an assumption that he or she is secluded from the presence or view of others, and that assumption is a reasonable one under all the circumstances, meaning that it is an appropriate one under all the circumstances according to an objective standard." *Nelson*, 294 Wis. 2d 578, ¶21.  In addition, "the phrase 'reasonable expectation of privacy' in … § 942.09(2)(am)1. means a reasonable expectation under the circumstances that one will not be recorded in the nude." *Jahnke*, 316 Wis. 2d 324, ¶14.

¶19     We next discuss evidence adduced in this case regarding B.'s reasonable expectation of privacy.

7

## II.  Reasonable Expectation of Privacy.

¶20    B. testified that she did not know about the camera's installation at the time she stepped into the shower on September 11, 2017, and B. "froze" when she saw the camera.  B. immediately took action to cover herself and get away from the camera.  From that testimony, the jury could reasonably infer that B. had a reasonable expectation of privacy and that she would not be recorded when she got into the shower on September 11, 2017.

¶21    B. further testified that, based on her discovery of the camera on September 11, 2017, she thereafter tried to protect her privacy when she showered by covering the camera or moving it.  B. did so in spite of warnings from McWilliam and her mother that she must leave the camera alone and she would be "in trouble" if she moved the camera from its position in the shower.  The description from the detective of the recording of B. showering on October 15, 2017, and the jury's view of those recordings, shows that B.'s attempts were not successful.  B.'s testimony was that she was unaware that her attempts at preventing the recordings of her showers "didn't always work."  From that, the jury could reasonably infer that B. believed she prevented the recording of herself in the shower.  This evidence supports an inference that B.'s expectation of privacy when she showered on October 15, 2017, was reasonable, and she reasonably believed that her shower was not recorded.

¶22    B. further testified that she did not attempt to cover the camera before using the toilet, including on October 15, 2017, "[b]ecause [she] thought it only pointed either at the shower or at the door."  B.'s mother did not tell B. that the toilet was visible to the camera.  From that, the jury could reasonably infer that

B. had a reasonable expectation of privacy while using the toilet on October 15, 2017 and had no reason to think that the toilet was visible to the camera.

¶23   As established by the above-discussed evidence, the jury could reasonably adopt inferences consistent with McWilliam's guilt. *See* ***Poellinger***, 153 Wis. 2d at 506-07. We must accept the jury's inferences because the trial evidence supporting findings of guilt is not incredible as a matter of law. ***Id.*** at 507. Accordingly, there was sufficient evidence of McWilliam's guilt on each of the four counts.

¶24   McWilliam advances four arguments challenging the sufficiency of the evidence on the appealed counts. The arguments fail for the following reasons.

¶25   First, McWilliam argues that "the evidence … does not depict a circumstance where … the camera was intentionally operated with the purpose of capturing intimate representations of third parties." McWilliam's contention misses the mark because it is beside the point. This argument does not directly address the sole element of the crimes that McWilliam challenges on appeal: the reasonableness of B.'s expectation of not being recorded while in the shower and while using the toilet. Further, as discussed, the jury had sufficient evidence to convict McWilliam of these four charges. McWilliam's argument does not undermine that conclusion in any way.

¶26   Second, McWilliam argues that B.'s expectation of privacy was "limited" in these circumstances because her mother was aware of the recordings. Based on that fact, McWilliam contends that a statutory exception to the prohibition of capturing an intimate representation of a person under the age of

9

eighteen without the person's consent applies here. WISCONSIN STAT. § 942.09(2)(bm)1m.a. and b. state:

> 1m. Notwithstanding par. (am), if the person depicted in an intimate representation or reproduction is a child, a parent, guardian, or legal custodian of the child may do any of the following:
>
> a. Capture and possess the representation or make and possess the reproduction depicting the child.
>
> b. Distribute or exhibit a representation captured or possessed under subd. 1m. a., or distribute or exhibit a reproduction made or possessed under subd. 1m. a.

Sec. 942.09(2)(bm)1m. McWilliam's argument collapses based on the evidence received at trial and our standard of review.[6]

¶27 The initial reason this argument fails is that WIS. STAT. § 942.09(2)(bm)1m. does not apply to McWilliam. He concedes, correctly, that he was never B.'s parent, guardian, or legal custodian, and the exception he relies on is available only to persons with such a status.

¶28 In an attempt to fill that large gap, McWilliam asserts that the defense noted in WIS. STAT. § 942.09(2)(bm)1m. applies to him because B.'s mother "effectively consented to the installation[] and operation of the camera." But, in order for the exception in § 942.09(2)(bm)1m. to apply to McWilliam based on B's mother's "consent," the jury would have been required to conclude that B.'s mother "capture[d]" the recordings of B. in the bathroom, she "distributed" those to McWilliam, and he was therefore an innocent recipient of the videos. *See* § 942.09(2)(bm)1m. However, evidence that the jury could have

---

[6] We assume, without deciding, that McWilliam raised this argument in the circuit court.

reasonably relied on allows a different interpretation of the relevant circumstances that affirms these convictions. B.'s mother testified that installation of the camera was McWilliam's idea, and the jury could have reasonably inferred from the presence of the recordings on McWilliam's electronic devices that McWilliam captured the recordings and that B.'s mother did not capture the recordings. Accordingly, based on the evidence before the jury, the jury must have concluded that the exception to this crime in § 942.09(2)(bm)1m. does not apply so as to limit B.'s reasonable expectation of privacy in these circumstances.

¶29    Third, concerning the September 11, 2017 recording, McWilliam argues that the camera was visible above B.'s head and within her reach and, as a result, the reasonableness of B.'s expectation that she was not being recorded in the shower was "negated by the conspicuous presence of the camera staring down at her." The evidence the jury could have credited showed that, as of September 11, 2017, no one had told B. that there was a camera in the ceiling tiles above the shower, and B. appeared shocked and confused when she first spotted it. The jury could quite reasonably conclude that B. had a reasonable expectation of privacy at that time. Our case law confirms this conclusion. In *Nelson*, this court affirmed a conviction even though the camera that secretly recorded the nude victims may have been visible from their window. *See Nelson*, 294 Wis. 2d 578, ¶10 (The victims "did not learn that they had been videotaped until the mother of one woman came to visit later in the summer and noticed what looked like a video camera in a window in Nelson's house."). The same logic applies here. The assertion that B. might have earlier seen the camera from some vantage point does not preclude McWilliam's convictions for secretly recording B. in September 2017 without her consent.

¶30 Fourth, McWilliam argues that, by the time of the October 15, 2017 recordings, B. did not have a reasonable expectation of privacy in the bathroom because the placement of the camera was known to B. However, B.'s testimony was that she thought she had prevented the recordings in the shower by placing a rag over the camera and moving the camera. B. further testified that she was unaware that the toilet was visible to the camera. A jury could reasonably decide that B., as of October 15, 2017, thought that she had figured out how to be in the bathroom without being recorded, and she reasonably expected not to be recorded. That B. was recorded anyway does not mean that her expectation was unreasonable.

¶31 In sum, there was sufficient evidence for the jury to find McWilliam guilty on each of the four charges of capturing an intimate representation of a person under the age of eighteen without her consent.

## CONCLUSION

¶32 For the foregoing reasons, we affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.